# LEONARD J. KERPELMAN *v.* WILLIAM T. S. BRICKER

[No. 100, September Term, 1974.]

*Decided December 16, 1974.*

The cause was argued before MORTON, GILBERT and MOORE, JJ.

*Leonard J. Kerpelman* for appellant.

*Thomas G. Peter, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *J. Michael McWilliams, Assistant Attorney General,* on the brief, for appellee.

MOORE, J., delivered the opinion of the Court.

In this action for libel, the appellant, a member of the Bar of the State of Maryland, alleged in a three-count declaration that the appellee, an attorney and a Deputy Administrator of the State Motor Vehicle Administration, falsely and maliciously charged in a letter addressed to the Chairman of the Grievance Committee of the Maryland State Bar Association, that appellant's behavior "before a quasi-judicial representative of the State government was a disgrace to the legal profession, and conduct that certainly requires consideration by your Committee." The communication further recited that it was written "not only as Deputy Administrator of a State agency, but as an attorney whose reaction to Mr. Kerpelman's conduct was one of embarrassment and disgust." A demurrer to the declaration on the ground of absolute privilege was sustained without leave to amend.

It is well settled in Maryland that statements made by counsel and by parties in the course of "judicial proceedings" are privileged so long as such statements are material and pertinent to the questions involved, irrespective of the motive with which they are made. *DiBlasio v. Kolodner,* 233 Md. 512, 197 A. 2d 245 (1964); *Kennedy v. Cannon,* 229 Md. 92, 182 A. 2d 54 (1962); *Maulsby v. Reifsnider,* 69 Md. 143, 14 A. 505 (1888). This constitutes an absolute privilege. It is distinguished from a qualified privilege in that the former provides immunity irrespective of the purposes or motive of the defendant or the reasonableness of his conduct, while the

latter is conditioned upon the absence of malice and can be lost by abuse. *Kennedy v. Cannon, supra.* "This absolute immunity," wrote Sybert, J. in *Kennedy,* "extends to the judge as well as to witnesses and parties to the litigation, for defamatory statements uttered in the course of a trial or contained in pleadings, affidavits, depositions, and other documents directly related to the case."

Petitions or complaints charging professional misconduct of an attorney are customarily presented in the first instance to the Grievance Committee of a Bar Association and the proceedings are controlled by Code 1957 (1968 Repl. Vol.), Art. 10, §§ 11-26 "Misconduct of Attorneys — Negligence — Disbarment — Suspension" and by Maryland Rules of Procedure, Subtitle BV, "Discipline and Inactive Status of Attorney."

A proceeding before a Grievance Committee has been characterized as a "judicial proceeding." *Braverman v. Bar Association of Baltimore,* 209 Md. 328, 336, 121 A. 2d 473 (1956), *cert. denied* 352 U. S. 830 (1956). In investigations of such complaints and in the conduct of disciplinary proceedings, such a Committee acts as a quasi-judicial body and is invested with the authority, acting through its executive council, to file charges against an attorney in the Court of Appeals. Rule BV 3.

Clearly the filing of the complaint in this case initiated a judicial proceeding by setting in motion the grievance procedure. Other States have held that a communication similar to defendant's letter is absolutely privileged. *Wiener v. Weintraub,* 22 N.Y.2d 330, 239 N.E.2d 540 (1968); *Ramstead v. Morgan,* 219 Ore. 383, 347 P. 2d 594, 77 A.L.R.2d 481 (1959). *See also* 3 Restatement, Torts §§ 587, 588. No previous Maryland case has squarely decided the matter and we are urged to rule that only a qualified privilege exists where the complaint is filed not by a lay person but "by a public official learned in the law" who is at once both a "brother and a competitor." We strongly disagree with the latter characterization. Members of the bar are brothers, in a collegial sense, but they are competitors only in the spirit of public service and not — as

argued by appellant Kerpelman in brief and at oral argument — in the pursuit of economic advantage, one against another.[1] The practice of law is a profession, not a trade nor a business. Indeed, with the ministry and medicine, it is one of the three "learned professions." [2]

"For lawyers, the most important truth about the law is that it is a profession." This statement by the renowned Dean John H. Wigmore from his Foreword to Carter's, *The Ethics of the Legal Profession*, (1915), was quoted by Chief Judge Vanderbilt in the case of *In re Rothman*, 12 N. J. 528, 97 A. 2d 621 (1953), as well as these observations of Dean Wigmore which immediately followed:

> "*As a profession, the law must be thought of as ignoring commercial standards of success — as possessing special duties to serve the state's justice — and as an applied science requiring scientific training.*
>
> '*And, if it is thus set apart as a profession, it must have traditions and tenets of its own, which are to be mastered and lived up to. This living spirit of the profession, which limits yet uplifts it as a livelihood, has been customarily known by the vague term 'legal ethics.' There is much more to it than rules of ethics. There is a whole atmosphere of life's behavior. What is signified is all the learning about the traditions of behavior that mark off and emphasize the legal profession as a guild of public officers. And the apprentice must hope and expect to make full acquaintance with this body of*

---

**1.** We agree with the Supreme Court of California which, when confronted with a similar argument stated, "Notwithstanding the declaration of the petitioner, we do not believe that the profession of the law is, or ought to be, merely a 'highly competitive business.' " Barton v. State Bar of Calif., 209 Cal. 677, 681, 289 P. 818 (1930).

**2.** Roscoe Pound in referring to these three "learned professions" states in The Lawyer from Antiquity to Modern Times (1953) at 6: "Historically, there are three ideas involved in a profession: organization, learning, *i.e.*, pursuit of a learned art, and a spirit of public service. These are essential. A further idea, that of gaining a livelihood, is involved in all callings. It is the main if not the only purpose in the purely money making callings. In a profession it is incidental."

*traditions, as his manual of equipment, without which he cannot do his part to keep the law on the level of a profession.'* " [Italics supplied.]

Moreover, appellant's contention unfortunately overlooks the important principle that practitioners are required to conduct themselves in accordance with the Canons, Ethical Standards and Directives of the Code of Professional Responsibility adopted by Maryland Rule 1230 which impose upon the individual attorney a duty to call to the attention of the State or local Bar Association improper conduct of a fellow practitioner. This serious responsibility is clearly set forth in Ethical Consideration 1-4 of Canon One of the Code:

"The integrity of the profession can be maintained only if conduct of lawyers in violation of the Disciplinary Rules is brought to the attention of the proper officials. A lawyer should reveal voluntarily to those officials all unprivileged knowledge of conduct of lawyers which he believes clearly to be in violation of the Disciplinary Rules. A lawyer should, upon request, serve on and assist committees and boards having responsibility for the administration of the Disciplinary Rules."

Misconduct is specifically defined in Disciplinary Rule 1-102 and the requirement of disclosure of professional misconduct is contained in Disciplinary Rule 1-103 (A):

"A lawyer possessing unprivileged knowledge of a violation of DR 1-102 shall report such knowledge to a tribunal or other authority empowered to investigate or act upon such violation."

It is apparent, therefore, that appellant's argument for a qualified privilege only is in derogation of the ethical standards to which he himself is required to adhere. We reject his contention. To Mr. Kerpelman's complaint that the rule of absolute privilege which we adopt affords no protection from false and malicious charges, a ready response is found in the words of the Court of Appeals in *Maulsby, supra* (pp. 152-3):

"It is better therefore to make the rule of law so large that counsel acting *bona fide* in the discharge of duty, shall never be troubled, although by making it so large, others who have acted *mala fide* and maliciously, are included. The question whether words spoken by counsel were spoken maliciously or in good faith, are, and always will be, open questions, upon which opinion may differ, and counsel, however innocent, would be liable if not to judgments, to a vexatious and expensive litigation. The privilege thus recognized by law is not the privilege merely of counsel, but the privilege of clients, and the evil, if any, resulting from it must be endured for the sake of the greater good which is thereby secured."

And Chief Judge Fuld, writing for the Court of Appeals of New York in *Wiener, supra,* stated with clarity:

"A lawyer against whom an unwarranted complaint has been lodged will surely not suffer injury to his reputation among the members of the Grievance Committee since it is their function to determine whether or not the charges are supportable. Any other risk of prejudice is eliminated by the provision of the Judiciary Law (§ 90, subd. 10) which declares that 'all papers * * * upon any complaint, inquiry, investigation or proceeding relating to the conduct or discipline of an attorney * * * shall * * * be deemed private and confidential.' " [3]

---

**3.** *See,* Note: "Developments In The Law of Defamation, 69 Harv. L. Rev. 875, 921:

"It would seem that courts, in deciding whether an absolute or a qualified privilege should be granted in a particular type of proceeding, should more appropriately consider whether the public interest in free disclosure outweighs the harm to individuals which may result from malicious defamation. The most significant criteria for appraising this interest are the size of the segment of the public affected by the proceeding and the extent to which that segment is affected."

Confidentiality is also guaranteed in Maryland by Rule BV2, § f.

Based on the reasoning of the cases from other jurisdictions cited above and the considerations implicit in the Code of Professional Responsibility, we conclude that the court below had no alternative but to sustain the demurrer since the defendant was protected by an absolute privilege which is not dependent upon the existence or nonexistence of malice.

We reject appellant's further suggestion that the court improperly sustained the demurrer without leave to amend. A demurrer is a proper method by which to assert the defense of absolute privilege. *Maulsby v. Reifsnider, supra.* the defense of *qualified* privilege cannot be raised on demurrer. *Walker v. D'Alesandro,* 212 Md. 163, 169, 129 A. 2d 148 (1957).

Appellant's contention is that he should have been afforded an opportunity to amend the declaration to state a claim for malicious prosecution. This question was not before the trial court and is not before us. Maryland Rule 1085. We observe, however, that the foundation for his claim is *Lilley v. Roney,* [1892] 61 Q.B. 727 where the defendant in a libel action had addressed a letter of complaint against a solicitor to the Registrar of the Incorporated Law Society. The complaint was dismissed as groundless and the solicitor was exonerated of any professional misconduct.[4] The lower court dismissed the action because it was made in the course of a judicial proceeding and was, therefore, absolutely privileged. This dismissal was affirmed on appeal, the court stating that "[t]he claim ought to have been for maliciously instituting proceedings, not for libel" and that "leave ought to be given to the plaintiff to amend his pleading to this effect if he wishes to do so."

We would consider this case unpersuasive even if apposite. A disciplinary proceeding for professional misconduct is not a proceeding of a criminal character which is the first

---

4. In the instant case, the record does not disclose the disposition of appellee's complaint against Mr. Kerpelman.

essential element of a cause of action for malicious prosecution. Nor is it the trial of an action at law. *Balliet v. The Baltimore County Bar Association*, 259 Md. 474, 478, 270 A. 2d 465 (1970); *Braverman v. Bar Association of Baltimore*, 209 Md. 328, 336, 121 A. 2d 473, *cert. denied*, 352 U. S. 830 (1956), *supra*.

We find it unnecessary to consider appellee's claim that the lower court should have sustained his demurrer on the ground of governmental immunity.

> *Judgment affirmed; appellant to pay the costs.*