UNITED STATES of America

v.

**Gregory HURT, Appellant.**

No. 72–2229.

United States Court of Appeals,
District of Columbia Circuit.

March 8, 1976.

Rehearing Denied April 22, 1976.

William J. Potts, Jr., Washington, D. C. (appointed by this Court), was on the supplemental brief for appellant.

Earl J. Silbert, U. S. Atty., Washington, D. C., John A. Terry, Roger M. Adelman, and Stuart M. Gerson, Asst. U. S. Attys., Washington, D. C., were on the response to appellant's supplemental brief.

Before ROBINSON and ROBB, Circuit Judges and MATTHEWS,* United States Senior District Judge for the United States District Court of the District of Columbia.

Opinion for the Court filed by Circuit Judge ROBINSON.

SPOTTSWOOD W. ROBINSON, Circuit Judge:

This case presents uniquely a claim of ineffective assistance of counsel in proceedings on a remand which we ordered for investigation of an earlier claim of ineffective assistance of counsel at a criminal trial. Our careful review of the record convinces us that the representation provided for the remand proceedings did not meet constitutional standards. Accordingly, we must remand once again.

I

Following appellant's conviction on three counts of robbery,[1] we appointed new counsel to represent him on appeal. Counsel briefed and orally argued several grounds for reversal, including ineffective aid by his

---

* Sitting by designation pursuant to 28 U.S.C. § 294(c) (1970).

1. See D.C.Code § 22–2901 (Supp. V, 1972).

trial counsel,[2] a position first advanced in an affidavit which appellant presented to the District Court after notice of the appeal had been filed. Lacking a record upon which that contention could be measured,[3] we remanded to the District Court for appropriate proceedings,[4] holding the appeal in abeyance pending further order.[5] It was our expectation that appellant would be represented on remand by the attorney appointed as his counsel on appeal.

It so happened, however, that shortly after oral argument on the appeal, trial counsel brought a $2 million libel suit against appellate counsel, a development of which we were unaware when we remanded. The libel allegedly was appellate counsel's argument in his brief on appeal that trial counsel had not effectively served appellant prior to conviction. When, following our remand, the issue of ineffective assistance came on for hearing in the District Court, the libel action was still pending.[6]

At the outset of the hearing, appellate counsel, accompanied by his own attorney, asked to be excused as appellant's lawyer on the basis of a conflict of interest.[7] He explained that, because of the libel suit, he feared that his presentation of facts asserted in appellant's affidavit would be considered a second publication of defamatory matter, and thus would aggravate his situation. He also argued that unless leave to withdraw was granted, appellant himself was apt to be prejudiced. As counsel expressed it, "I . . . feel that I am inhibited from defending or representing [appellant] on this remand proceeding for the simple reason that I have a personal interest in this matter which may not be at all times and in every respect co-extensive and equal to his."

The District Court rebuffed counsel's plea, suggesting that whatever might be said during the hearing would be totally privileged. This view was unsatisfactory to counsel, but the court soon brought further protestations to an end. The court stated that appellate counsel need not participate in the proceeding,[8] and that the court itself would cross-examine trial counsel on the basis of the allegations of appellant's affidavit.

With that the hearing commenced, but yet another shadow soon crept over the proceeding. After reading appellant's affidavit into the record, the court called upon the Government to proceed. Following direct examination of trial counsel, the Government argued that appellate counsel

---

**2.** Without passing on the merits of the affidavit, the District Court granted appellant leave to file it as a supplemental record on appeal.

**3.** The only "record" focusing directly on the issue was the affidavit itself.

**4.** See *United States v. DeCoster,* 159 U.S.App. D.C. 326, 487 F.2d 1197 (1973), which was decided after appellant's affidavit had been sent here.

**5.** *United States v. Hurt,* No. 72–2229 (D.C. Cir. Apr. 28, 1974) (unreported).

**6.** Appellate counsel had filed a motion to dismiss the libel action, but the court had not ruled on the motion. Ultimately, but after completion of the proceedings on remand, the court dismissed the action on the ground that trial counsel had not stated a claim upon which relief could be granted. We note judicially that no appeal from that disposition was taken.

**7.** This was the third such request. The first came five days after we ordered the remand, when appellate counsel addressed to the District Court a letter asking to be relieved of the responsibility of representing appellant at the hearing. The letter cited the pending libel suit, and asserted that the constraints imposed upon him to avoid aggravation of the alleged libel raised a substantial question as to his ability to render the service to which appellant was legally entitled. Aggravation was possible, the letter continued, because the ineffective-assistance charge on which the suit was based was the very subject upon which proof would be undertaken on remand. This request was denied. Two days after that letter, the attorney for appellate counsel renewed the request in a second letter to the court, advancing much the same arguments. Again the court refused to excuse appellate counsel from continued representation of appellant.

**8.** In the court's words, it was "ruling that [appellate counsel] does not have to ask any questions and go forward in this, but he is not to go out of the courtroom," and that he was to remain as "[a]dvisory counsel" to his own lawyer during the hearing.

should conduct the cross-examination, surmising that the legal interests of appellant and appellate counsel were coextensive—that aggravation of the alleged defamation could be pressed more forcefully if only counsel retreated from the charge of ineffective representation. Counsel again objected, citing the ethical canon that a lawyer remain free of interests tending to conflict with those of his client.[9] The court paid no heed and, despite having previously excused appellate counsel from active participation in the hearing, directed him under the threat of contempt [10] to cross-examine trial counsel.

In this milieu, appellate counsel resumed his function as appellant's attorney and the hearing moved forward to completion. On the basis of testimony by trial counsel, the prosecutor and appellant, the court made a series of findings which led it to hold that appellant had been competently assisted at his trial. The case then came back to this court and the parties filed supplemental memoranda addressing the adequacy of the representation on remand as well as that at trial. Since we conclude that appellant did not receive his constitutional due at the remand hearing, we do not at this stage of the litigation reach the question whether trial counsel's performance passes muster.

II

Among the protections afforded by the Sixth Amendment is the guaranty that "[i]n all criminal prosecutions, the accused shall enjoy the right to . . . have the Assistance of Counsel for his defence." [11] It is settled that "the right to counsel is the right to the effective assistance of counsel" [12]—meaning "the reasonably competent assistance of an attorney acting as his diligent conscientious advocate" [13] and that this right obtains at all " 'critical' stages of [criminal] proceedings".[14] It is equally clear, particularly in view of their nature and potential complexity,[15] that the proceedings on remand were of that character.[16] The threshold question is whether appellant's representation by appellate counsel on remand, in the circumstances described, measured up to constitutional standards. Only when the issue as to the adequacy of trial counsel's performance is probed by counsel competently representing appellant can we address that issue on appeal.

Long ago, the Supreme Court instructed that "[t]he right to counsel guaranteed by the Constitution contemplates the services of an attorney devoted solely to the inter-

9. See note 22, *infra*.

10. Appellant counsel was likewise unsuccessful in a bid for a stay of the proceedings to enable an appeal from the threat of a contempt citation for refusing to obey. The court also denied his plea for a continuance, in which he stressed, among other things, his uncertainty as to his new role.

11. U.S.Const. Amend. 6. See also Fed.R. Crim.P. 44.

12. *McMann v. Richardson,* 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 1449 n. 14, 25 L.Ed.2d 763, 773 n. 14 (1970). See also *Reece v. Georgia,* 350 U.S. 85, 90, 76 S.Ct. 167, 170–171, 100 L.Ed. 77, 83 (1955); *Avery v. Alabama,* 308 U.S. 444, 446, 60 S.Ct. 321, 322, 84 L.Ed. 377, 379 (1940); *Powell v. Alabama,* 287 U.S. 45, 57, 53 S.Ct. 55, 59–60, 77 L.Ed. 158, 164–165 (1932).

13. *United States v. DeCoster, supra* note 4, 159 U.S.App.D.C. at 331, 487 F.2d at 1202.

14. *United States v. Wade,* 388 U.S. 218, 224, 87 S.Ct. 1926, 1931, 18 L.Ed.2d 1149, 1156 (1967); *Miranda v. Arizona,* 384 U.S. 436, 475, 86 S.Ct. 1602, 1628, 16 L.Ed.2d 694, 724 (1966); *Escobedo v. Illinois,* 378 U.S. 478, 486, 84 S.Ct. 1758, 1762, 12 L.Ed.2d 977, 983 (1964).

15. See *United States v. DeCoster, supra* note 4, 159 U.S.App.D.C. at 331–333, 487 F.2d at 1201–1204.

16. See *Argersinger v. Hamlin,* 407 U.S. 25, 31–34, 92 S.Ct. 2006, 2009–2011, 32 L.Ed.2d 530, 535–536 (1972); *Gideon v. Wainwright,* 372 U.S. 335, 344, 83 S.Ct. 792, 796, 9 L.Ed.2d 799, 805 (1963); *Johnson v. Zerbst,* 304 U.S. 458, 462–463, 58 S.Ct. 1019, 1022, 82 L.Ed. 1461, 1465 (1938); *Powell v. Alabama, supra* note 12, 287 U.S. at 69, 53 S.Ct. at 64, 77 L.Ed. at 170. Compare *Chessman v. Teets,* 354 U.S. 156, 162, 77 S.Ct. 1127, 1130, 1 L.Ed.2d 1253, 1258 (1957) (proceedings for settlement of appeal record).

ests of his client,"[17] an admonition which we ourselves have had occasion to observe.[18] "Undivided allegiance and faithful, devoted service to a client," the Court declared, "are prized traditions of the American lawyer. It is this kind of service for which the Sixth Amendment makes provision."[19] The crucial question confronting us is whether appellant had that quality of service at the hearing on remand.

To be sure, most conflicts of interest seen in criminal litigation arise out of a lawyer's dual representation of co-defendants,[20] but the constitutional principle is not narrowly confined to instances of that type. The cases reflect the sensitivity of the judiciary to an obligation to apply the principle whenever counsel is so situated that the caliber of his services may be substantially diluted.[21] Competition between the client's interests and counsel's own interests plainly threatens that result, and we have no doubt that the conflict corrupts the relationship when counsel's duty to his client calls for a course of action which concern for himself suggests that he avoid.[22]

That, we think, was the case here. Trial counsel sued appellate counsel for libel, seeking $2 million as damages. The theory of the suit was the presentation in this court, on allegedly false and irrelevant facts, of appellant's claim that trial counsel's performance was constitutionally inadequate. The suit was still pending when appellate counsel was summoned to undertake proof of that claim at the hearing on remand. Therefore, while his client's interest plainly lay in hammering away toward that objective, self-interest in not worsening his own position tugged strongly in the opposite direction. We are unable to distinguish his situation from the more familiar instance in which regard for the client's well-being clashes fatally with the lawyer's proprietary interests.[23]

17. *Von Moltke v. Gillies,* 332 U.S. 708, 725, 68 S.Ct. 316, 324, 92 L.Ed. 309, 321 (1948). See also *Glasser v. United States,* 315 U.S. 60, 70, 62 S.Ct. 457, 464–465, 86 L.Ed. 680, 699 (1942).

18. See *United States v. Bell,* 165 U.S.App.D.C. 146, 163, 506 F.2d 207, 224 (1974); *Lollar v. United States,* 126 U.S.App.D.C. 200, 202–204, 376 F.2d 243, 245–247 (1967); *Campbell v. United States,* 122 U.S.App.D.C. 143, 144–145, 352 F.2d 359, 360–361 (1965); *Wynn v. United States,* 107 U.S.App.D.C. 190, 191–192, 275 F.2d 648, 649–650 (1960); *Lebron v. United States,* 97 U.S.App.D.C. 133, 137, 229 F.2d 16, 20 (1955), *cert. denied,* 351 U.S. 974, 76 S.Ct. 1035, 100 L.Ed. 1492 (1956).

19. *Von Moltke v. Gillies, supra* note 17, 332 U.S. at 725–726, 68 S.Ct. at 324, 92 L.Ed. at 322 (footnote omitted).

20. See cases collected *supra* note 18.

21. *E. g., Von Moltke v. Gillies, supra* note 17, 332 U.S. at 725–726, 68 S.Ct. at 324, 92 L.Ed. at 321–322. (legal advice supplied by lawyer-agent of the Federal Bureau of Investigation); *Taylor v. United States,* 96 U.S.App.D.C. 379, 226 F.2d 337 (1955) (defense counsel also serving as attorney for informant used as Government witness); *Scott v. District of Columbia,* 99 A.2d 641, 642–643 (D.C.Mun.App.), *aff'd,* 94 U.S.App.D.C. 227, 214 F.2d 860 (1953) (defense counsel simultaneously representing Government's principal witness); *Kelly v. Peyton,* 420 F.2d 912, 914 (4th Cir. 1969) (defense counsel also justice of peace who signed arrest warrants); *Randazzo v. United States,* 339 F.2d 79, 80–81 (5th Cir. 1964) (defense counsel representing joint indictee not then a codefendant); *United States ex rel. Miller v. Myers,* 253 F.Supp. 55, 57 (E.D.Pa.1966) (defense counsel in burglary case also serving as victim's counsel in unrelated civil suit).

22. "The professional judgment of a lawyer should be exercised, within the bounds of the law, solely for the benefit of his client and free of compromising influences and loyalties. Neither his personal interests, the interests of other clients, nor the desires of third persons should be permitted to dilute his loyalty to his client." American Bar Association, Code of Professional Responsibilities, EC 5–1 (1971) (footnote omitted). "A lawyer should not accept proffered employment if his personal interests or desires will, or there is a reasonable probability that they will, affect adversely the advice to be given or services to be rendered the prospective client." *Id.* EC 5–2 (footnote omitted). See also *United States v. Anonymous,* 215 F.Supp. 111, 113 (E.D.Tenn.1963); *Johns v. Smyth,* 176 F.Supp. 949, 952 (E.D.Va. 1959).

23. See, e. g., *Hafter v. Farkas,* 498 F.2d 587, 589 (2d Cir. 1974); *Littleton v. Kincaid,* 179 F.2d 848, 858 (4th Cir.) *cert. denied,* 340 U.S. 809, 71 S.Ct. 38, 95 L.Ed. 595 (1950); *In re Goldstein,* 7 Terry 450, 45 Del. 450, 85 A.2d 361 (Del.1951); *Creller v. Baer,* 354 Mich. 408, 411, 93 N.W.2d 259, 261 (1958).

We are mindful that appellate counsel actually had little or nothing to fear from continued representation of appellant on the evidentiary inquiry into the quality of the service which trial counsel had rendered. In communications during the course and as a part of a judicial proceeding in which an attorney participates as counsel, he is protected by an absolute privilege to publish false and defamatory matter of another so long as it has some relation to the proceeding.[24] The privilege immunizes the attorney from liability for defamation despite the purpose underlying its publication, and notwithstanding belief or even knowledge as to its falsity.[25] And while the communication, to trigger the privilege, must have some relation to the proceeding, it need not be relevant in the legal sense; it suffices that it has "enough appearance of connection with the case . . . so that a reasonable man might think [it] relevant."[26] For, as we have explained, "[t]he doctrine of absolute immunity for statements in judicial proceedings reflects a judgment that the need for completely free speech for litigants is dominant, and that this freedom is not to be endangered by subjecting parties to the burden of defending their motives in subsequent [defamatory] litigation, or to the risk that juries may misapprehend those motives."[27]

Here, however, the record demonstrates that these considerations were set for naught by appellate counsel's seemingly unalterable attitude toward the lawsuit in which he was personally involved. The inevitable though tiny risk of a defamation suit from professional activities in a judicial proceeding had materialized. The chance that the suit might be lost, though small, had not abated.[28] The stakes, measured by the gravity of defamation of professional character, were high. That these personal concerns loomed large to counsel is manifest from their assertion over and over again as grounds for leave to retire from appellant's representation, and from his strenuous efforts—three in all—to free himself from the ordeal.[29] There is no reason whatever to doubt counsel's sincerity;[30] and however counsel's apprehensions might appear to a disinterested observer, the record indulges only the conclusion that to counsel they were very real.

We think, then, that the District Court erred in conducting the hearing without appointing another lawyer for appellant. The first essential element of effective assistance of counsel is counsel able

---

24. *Brown v. Collins,* 131 U.S.App.D.C. 68, 71–72 & n. 4, 402 F.2d 209, 212 & n. 4 (1968); *Brown v. Shimabukuro,* 73 App.D.C. 194, 195, 118 F.2d 17, 18 (1941); *Young v. Young,* 57 App.D.C. 157, 158–159, 18 F.2d 807, 808–809 (1927); Restatement of Torts § 586 (1938); W. Prosser, Torts § 109 at 796–800 (3d ed. 1964).

25. Restatement of Torts § 587, comment *a* (1938); W. Prosser, Torts § 109 at 796–797 (3d ed. 1964); *Brown v. Collins, supra* note 24, 131 U.S.App.D.C. at 72, 402 F.2d at 212.

26. *Brown v. Collins, supra* note 24, 131 U.S. App.D.C. at 71, 72, 402 F.2d at 211, 212. See also *Brown v. Shimabukuro, supra* note 24, 73 App.D.C. at 195, 118 F.2d at 18; W. Prosser, Torts § 109 at 798–799 (3d ed. 1964). "Thus, the fact that the defamatory publication is an unwarranted inference from the evidence is not enough to deprive the attorney of his privilege. *So, too, the publication of defamatory matter in a question to a witness may be within the privilege although the question is withdrawn or the witness is directed by the judge not to answer it."* Restatement of Torts, comment *c*

(1938). "In determining the question of relevancy in such cases, it is the rule that the construction should be liberal, and that the privilege should embrace any statement which may possibly be pertinent. All doubt should be resolved in favor of the relevancy or pertinency of the matter complained of. . . . '[T]he matter, to which the privilege does not extend, must be so palpably wanting in relevance to the subject-matter of controversy as that no reasonable man can doubt its irrelevancy or impropriety . . . .'" *Young v. Young, supra,* note 24, 57 App.D.C. at 159, 18 F.2d at 809, quoting *Harlow v. Carroll,* 6 App.D.C. 128, 139–140 (1895).

27. *Brown v. Collins, supra* note 24, 131 U.S. App.D.C. at 72, 402 F.2d at 213.

28. See note 6, *supra.*

29. See note 7 *supra* and accompanying text.

30. Compare *Kaplan v. United States,* 375 F.2d 895, 897 (9th Cir. 1967).

and willing to advocate fearlessly and effectively,[31] and the libel suit generated far too great a dilemma for appellate counsel to permit him that range of action. Obviously, neither the court [32] nor the attorney for appellate counsel [33] was at liberty to assume the role of advocate for appellant. And we perceive no basis upon which it might be held that appellant waived his constitutional entitlement to competent representation.[34]

Nor are we able to say that appellant was not prejudiced. The Government points out that appellant does not suggest in retrospect anything that appellate counsel intended to undertake at the hearing that he did not feel free to do. This attempt to minimize the problem ignores the incontrovertible fact that appellate counsel was adamantly opposed to doing anything at all, and that he proceeded only because the court ordered him to do so and threatened to hold him in contempt if he refused. We have recognized that "proof of prejudice may well be absent from the record precisely because counsel has been ineffective"; [35] we recognize, too, that lawyers frequently do not realize their own shortcomings. The pressure under which appellate counsel labored may well have resulted in subtle restraints which not even he could pinpoint or define. Try as we might, we could not approximate the effect which the overhanging threat of the libel suit had on the vigor of counsel's endeavors at the remand hearing. In sum, prejudice in the circumstances involved here is incapable of any sort of measurement. We believe, then, that we must heed the Supreme Court's admonition that "[t]he right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial." [36]

31. See *Anders v. California*, 386 U.S. 738, 744, 87 S.Ct. 1396, 1400, 18 L.Ed.2d 493, 498 (1967); *Suggs v. United States*, 129 U.S.App.D.C. 133, 135–136, 391 F.2d 971, 973–974 (1968); *Tate v. United States*, 123 U.S.App.D.C. 261, 269, 359 F.2d 245, 253 (1966).

32. "In our adversary system, it is enough for judges to judge." *Dennis v. United States*, 384 U.S. 855, 875, 86 S.Ct. 1840, 1851, 16 L.Ed.2d 973, 986 (1966).

33. See note 6 *supra*.

34. Early in the hearing, appellate counsel noted that had he been retained instead of appointed, he would encounter "serious problems" discharging his obligations to appellant. The court suggested that appellant be consulted as to his feelings about a substitution of counsel. When counsel questioned whether appellant could make "an informed judgment," the court directed counsel's own attorney to explain the situation to appellant. After a brief courtroom consultation, appellant responded, "I will accept another attorney," and the court attempted to define the conflict of interest for him. See *Campbell v. United States, supra* note 18, 122 U.S.App.D.C. at 144, 352 F.2d at 360; *Wynn v. United States, supra* note 18, 107 U.S.App.D.C. at 191, 275 F.2d at 649. When the court inquired of appellant as to whether he appreciated the possibility that another lawyer might not want to press the ineffective-assistance contention, appellant replied, "No, Ma'am. Really, I don't know what to say." The court then permitted oral argument to resume, and from that point onward the record reflects no further effort to ascertain appellant's ultimate response as to whether he had grasped the problem or its potential consequences.

We reiterate that "[w]e must indulge every reasonable presumption against the waiver of the unimpaired assistance of counsel." *Campbell v. United States, supra* note 18, 122 U.S. App.D.C. at 144, 352 F.2d at 360. See also *Glasser v. United States, supra* note 17, 315 U.S. at 70, 62 S.Ct. at 464–465, 86 L.Ed. at 699; *Johnson v. Zerbst, supra* note 16, 304 U.S. at 464, 58 S.Ct. at 1023, 82 L.Ed. at 1466. The record before us does not show "an intentional relinquishment or abandonment' of a fully known right." *In re Gault*, 387 U.S. 1, 42, 87 S.Ct. 1428, 1451, 18 L.Ed.2d 527, 554 (1967), quoting *Johnson v. Zerbst, supra* note 16, 304 U.S. at 464, 58 S.Ct. at 1023, 82 L.Ed. at 1466. Nor does the record disclose any determination by the District Court as to whether appellant's right to counsel was intelligently and competently waived. See *Westbrook v. Arizona*, 384 U.S. 150, 86 S.Ct. 1320, 16 L.Ed.2d 429 (1966); *Glasser v. United States, supra* note 17, 315 U.S. at 71, 62 S.Ct. at 465, 86 L.Ed. at 699–670; *Johnson v. Zerbst, supra* note 16, 304 U.S. at 465, 58 S.Ct. at 1023, 82 L.Ed. at 1467. We find no such waiver in this case.

35. *United States v. DeCoster, supra* note 4, 159 U.S.App.D.C. at 333, 487 F.2d at 1204.

36. *Glasser v. United States, supra* note 17, 315 U.S. at 76, 62 S.Ct. at 467, 86 L.Ed. at 702.

The District Court's ruling on remand is vacated, and appellant's affidavit is again remanded for proceedings consistent with this opinion.

*So ordered.*