Francis X. McLAUGHLIN, Plaintiff,

v.

Lammot du Pont COPELAND, Jr., et al., Defendants.

Civ. No. 77–218.

United States District Court,
D. Delaware.

June 15, 1978.

Francis X. McLaughlin, pro se.

Arthur G. Connolly, Jr., Wilmington, Del., for Lammot du Pont Copeland, Jr.

Richard A. Levine, Wilmington, Del., for E. Norman Veasey.

## MEMORANDUM AND ORDER

BLAIR, District Judge, Sitting by Designation.

This tort action was originally brought in the United States District Court for the District of Maryland under 28 U.S.C. § 1332 after removal from the Circuit Court for Baltimore County pursuant to 28 U.S.C. § 1441. All defendants then moved to dismiss the complaint for lack of *in personam* jurisdiction and, in an opinion reported at 435 F.Supp. 513, the court ruled that it lacked personal jurisdiction over one of the three defendants and transferred the case to the United States District Court for the District of Delaware pursuant to 28 U.S.C. § 1406(a). After the recusal of the judges of the Delaware District Court, Chief Justice Burger assigned the case to the undersigned judge who, for the purposes of the instant action, sits as a judge of the United States District Court for the District of Delaware.

### The Complaint

The plaintiff, Francis X. McLaughlin, alleges that defendants Lammot du Pont Copeland Junior and Senior conspired with Thomas A. Shaheen (and others) to defraud the creditors of the Winthrop Lawrence Corporation. Winthrop Lawrence is allegedly co-owned by Copeland Jr. and a corporation controlled by Shaheen. The details of this scheme are more fully exposited in the jurisdictional opinion found at 435 F.Supp. 513.

In 1970, Winthrop Lawrence and Copeland Jr. filed Chapter XI bankruptcy petitions in Baltimore and Wilmington, respectively. Defendant Veasey and his law firm were retained to represent Copeland Jr. in the Wilmington bankruptcy proceeding. McLaughlin appeared in that proceeding on behalf of Pappas, one of Copeland Jr.'s alleged creditors, and made several references to the allegedly fraudulent and potentially criminal activities of the Copelands. Shortly thereafter, McLaughlin advised the defendants that his client, who was also a claimant against Winthrop, had instructed him to file a class action against Copeland Sr., Copeland Jr., and others on behalf of all creditors of the Winthrop Lawrence Corporation.

The basic thrust of McLaughlin's complaint is that after learning of his investigation of their misconduct, the defendants became fearful that the plaintiff would publicly expose the Copelands' allegedly fraudulent activities and entered into an agreement to "discredit, defame and damage" him in an effort to forestall exposure and force the abandonment of the threatened class action. This scheme to discredit McLaughlin is alleged to have included an attempt to entice the plaintiff into committing the crime of extortion and violating DR 7–105 of the Code of Professional Responsibility in connection with his representation of Pappas. It is this alleged conspiracy which forms the basis of plaintiff's suit.

McLaughlin contends that Veasey, acting for himself, his client Copeland Jr., and Copeland Sr., "undertook a concerted effort to discover something 'actionable against'" either McLaughlin or his client, and that this effort increased when Veasey was informed of McLaughlin's intention to submit the results of his investigation to a congressional committee for referral to the Justice Department or the F.B.I.

In February of 1975 McLaughlin and Veasey met in Baltimore to discuss settlement of Pappas' claim against Copeland Jr. It is alleged by McLaughlin that Veasey's true purpose in attending the meeting was to "induce, entice or otherwise entrap" the

plaintiff into violating the Code of Professional Responsibility's rule against "threatening a criminal prosecution to obtain advantage in a civil matter." Plaintiff further alleges that when this plan failed, Veasey maliciously and falsely prepared a memorandum suggesting that McLaughlin had committed the crime of extortion and violated the Code of Professional Responsibility. The gravamen of his complaint is that Veasey's subsequent transmission of the memorandum, supporting documents from his file, and an explanatory letter dated March 5th to the judge presiding at the Wilmington bankruptcy proceeding together with the publication of copies of the March 5th letter to the attorneys of record in that proceeding, constituted libel and malicious interference in his business as a practicing attorney.

Upon receipt of the March 5th letter and enclosures, Judge Schwartz referred the matter to the Disciplinary Board of the District of Columbia Bar which concluded, after a hearing, that the evidence was insufficient to support a finding that McLaughlin had violated the Code of Professional Responsibility. McLaughlin contends that Veasey's publication of the letter and supporting documents to Judge Schwartz "caused" a false and malicious complaint to be instituted against him with the disciplinary board, and that both the initial publication to the judge and attorneys, and the initiation of the disciplinary proceeding were acts in furtherance of a pre-existing conspiracy between Veasey and the Copelands. These allegations are divided into three counts: libel (Count II), civil conspiracy to libel, discredit and otherwise damage (Count I), and malicious interference with business (Count III). Defendants have moved to dismiss the complaint pursuant to F.R.Civ.P. 12(b)(6).

### Libel

In his memorandum in opposition to defendants' motion to dismiss, McLaughlin correctly concedes that "statements made by an attorney during the course of judicial proceedings are absolutely privileged even if those statements are defamatory and irrespective of the motive of the statements as long as the alleged defamatory statement is pertinent, relevant and material to any issue present in the judicial proceeding." *See, e. g., United States v. Hurt,* 177 U.S.App.D.C. 15, 20, 543 F.2d 162, 167 (1976); *Petty v. General Accident Fire & Life Assurance Corp.,* 365 F.2d 419, 421 (3d Cir. 1966) (applying New Jersey law); *Read v. Baker,* 430 F.Supp. 472, 475–76 (D.Del. 1977) (applying Pennsylvania law but noting that Delaware law is identical with respect to privileged communications in judicial proceedings); *Tatro v. Esham,* 335 A.2d 623, 626 (Del.Super.1975). Plaintiff further concedes that a letter of complaint written to a grievance commission of a bar association is generally held to be absolutely privileged, *see Kerpelman v. Bricker,* 23 Md.App. 628, 329 A.2d 423 (1974), and that the publication in question "was in a judicial proceeding and has some relevancy to the proceedings, or in the alternative, initiated a judicial proceeding. . . ."

█ . In an attempt to avoid the legal implications of these concessions, McLaughlin argues that in sending the letter and accompanying documents to other counsel in the proceedings defendants "impliedly waived" the absolute privilege which he admits attached to the published material. Plaintiff cites no authority in support of this assertion and the relevant authority is in fact well settled to the contrary. The absolute privilege accorded to statements made in connection with a judicial proceeding is not qualified so as to exclude such statements when they are published to attorneys representing parties with an interest in the proceeding. "Where made in a proceeding or action the privilege is not limited to pleadings and affidavits in the proceedings or to statements made by the parties or their attorneys in open court. If made in letters between the parties or their attorneys or addressed to the court in connection with the proceeding they are likewise privileged provided they are pertinent thereto." *Simon v. Stim,* 11 Misc.2d 653, 176 N.Y.S.2d 475, 476 (1958). *See also Theiss v. Scherer,* 396 F.2d 646, 648–49 (6th

Cir. 1968); *Richeson v. Kessler,* 73 Idaho 548, 255 P.2d 707, 707–08 (1953). The substance of Veasey's letter was directly related to the status of his negotiations in the Wilmington bankruptcy proceeding and the attorneys who received copies of the letter were retained by parties to that proceeding. Since the sending of copies of Veasey's March 5th letter to Judge Schwartz to the attorneys in question falls squarely within the claimed privilege, such publication cannot be construed as a waiver of that privilege.

McLaughlin attempts to bolster his waiver argument with the assertion that publication of the defamatory letter to other counsel in the proceedings "was against the spirit and intent of the disciplinary rules," which "require that a complaint made pursuant to the rules by an attorney against another attorney be kept in strict confidence." The short answer to this contention is that Veasey made no such complaint. Veasey's letter was addressed to Judge Schwartz. No copy was sent to the District of Columbia Disciplinary Board and Veasey filed no complaint or petition with that body. Judge Schwartz, on his own initiative and without request from Veasey, referred the matter to the board. Thus, the question whether the absolute privilege which is accorded to complaints lodged with bar grievance committees, *see Kerpelman v. Bricker,* 23 Md.App. 628, 329 A.2d 423 (1974), extends to publications of the complaint to the counsel of record in the proceeding out of which the complaint arose is not here presented.

### Malicious Interference with Business

■ Authority, common sense, and the policy underlying the absolute immunity afforded statements made in the course of judicial proceedings dictate that if Veasey's March 5th letter is privileged against suit for defamation, it must also be protected in an action for interference with business. *Carr v. Watkins,* 227 Md. 578, 177 A.2d 841, 843 (1962). The privilege in question grows out of the strong public policy that a sense of freedom to speak and write in connection

with judicial proceedings, without the restraint of fear of an ensuing defamation action, is indispensable to the administration of justice. An action for tortious interference with business is subject to the same policy considerations. *See Middlesex Concrete Products & Excavating Corp. v. Carteret Indus. Assn.,* 68 N.J.Super. 85, 172 A.2d 22, 25 (1961).

Plaintiff's Counts II and III are predicated on the same acts, and the kindred torts of defamation and wrongful interference with business are indistinguishable for the purposes of the policies furthered through the absolute immunity afforded relevant statements made in connection with judicial proceedings. If defamation plaintiffs were permitted to draft around an absolute privilege by alleging wrongful interference with business, these important policies would be totally frustrated. As the Supreme Court of New Jersey stated in an opinion holding that the absolute defamation privilege which attaches to statements made in judicial proceedings extends to actions for malicious interference with business:

> [i]f the policy, which in defamation actions affords an absolute privilege or immunity to statements made in judicial and *quasi*-judicial proceedings is really to mean anything then we must not permit its circumvention by affording an almost equally unrestricted action under a different label.

*Rainier's Dairies v. Raritan Valley Farms,* 19 N.J. 552, 564, 117 A.2d 889, 895 (1955); *see also Carr v. Watkins,* 227 Md. 578, 177 A.2d 841, 843 (1962).

### Civil Conspiracy

■ The gravamen of an action in civil conspiracy is not the conspiracy itself but the underlying wrong which would be actionable absent the conspiracy. *Board of Education of Asbury Park v. Hoek,* 38 N.J. 213, 183 A.2d 633, 646 (1962). "In order for a civil action for conspiracy to be maintained, there must be, in addition to a confederation of two or more persons, (1) some unlawful act done in furtherance of the conspiracy, and (2) actual legal damage resulting to the victim-plaintiff." *Van Royen*

*v. Lacey,* 262 Md. 94, 97, 277 A.2d 13, 14 (1971). McLaughlin's complaint does not allege facts sufficient to meet this test.

■ The letter of March 5th is absolutely privileged and therefore cannot give rise to an action in defamation or interference with business. If the letter cannot give rise to a tort action, it cannot support an action in conspiracy to commit a tort, for it is well settled that "[n]o action in tort lies for conspiracy to do something unless the acts actually done, if done by one person, would constitute a tort." *Domchick v. Greenbelt Consumer Services,* 200 Md. 36, 42, 87 A.2d 831, 834 (1952).

In his memorandum in opposition to defendants' motion to dismiss, McLaughlin contends that even if Veasey's letter is absolutely privileged, "there are other tortious overt acts" in furtherance of the alleged conspiracy, "the most important one being the February 21, 1975 meeting in which Veasey's only purpose was to try and 'obtain something actionable against McLaughlin.'" This issue was conclusively resolved in the jurisdictional opinion which concluded that:

> Analytically, the question of jurisdiction for Counts I and III is the same as for Count II: was there a tortious act or omission in Maryland causing injury to McLaughlin? The act which is alleged to have occurred in Maryland is the February 21, 1975 meeting. The meeting was not the proximate cause of the alleged injury to the plaintiff. While it certainly was one of a preliminary number of acts leading to the mailings, if Veasey had returned to Wilmington and done nothing, there would be nothing upon which plaintiff could base a cause of action.

*McLaughlin v. Copeland,* 435 F.Supp. 513, 525 (1977). Since the only ostensibly tortious act, the mailing of the March 5th letter, is privileged and cannot give rise to a cause of action, McLaughlin is left with literally nothing upon which to base his suit. He does not allege that he was damaged by any act other than the publication of Veasey's letter, and it is axiomatic that "there is no such thing as a civil action for conspiracy but rather an action for damages caused by acts committed pursuant to a former conspiracy." *Benoit v. Amalgamated Local 299 United E. R. & M. W.,* 150 Conn. 266, 276, 188 A.2d 499, 503 (1963); *see Miller v. Preston,* 174 Md. 302, 199 A. 471, 475 (1938); *Kimball v. Harman,* 34 Md. 407, 409–10 (1871).

■ Having failed to state a claim upon which relief can be granted, McLaughlin is not entitled to discovery merely to determine whether or not additional, unasserted claims might exist. While a plaintiff is entitled to a full opportunity to adduce evidence in support of the cognizable claims set out in his complaint, he is not entitled to discovery for the purpose of determining whether or not there may be a factual basis for a claim he has not made. *Cohen v. Illinois Institute of Technology,* 524 F.2d 818, 827 (7th Cir. 1975), *cert. denied,* 425 U.S. 943, 96 S.Ct. 1683, 48 L.Ed.2d 187 (1976). The party seeking discovery has the burden of demonstrating its merits. *Clark v. Universal Builders, Inc.,* 501 F.2d 324, 340 (7th Cir.), *cert. denied,* 419 U.S. 1070, 95 S.Ct. 657, 42 L.Ed.2d 666 (1974). McLaughlin has failed to meet this burden.

Accordingly, it is this 15th day of June, 1978, by the United States District Court for the District of Delaware,

ORDERED, that the defendants' motion to dismiss be, and the same hereby is, GRANTED.