# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

KELLY ROOT and THOMAS JOYCE,   )
  )
    Plaintiffs,   )
  )
    v.   )
  )     C.A. No. N20C-05-156 CLS
MAIDPRO WILMINGTON,   )
THRESHOLD BRANDS LLC,   )
MAIDPRO FRANCHISE, LLC,   )
DAISY PEREZ, CASH IN JEWELRY   )
AND PAWN INC., and JUAN   )
CARIDE a/ka JUAN CARIDE-   )
HERNANDEZ,   )
  )
    Defendants.   )

Date Submitted: August 29, 2022
Date Decided: November 17, 2022

*Upon Defendant's Motion to Dismiss the Second Amended Complaint.*
**GRANTED.**
**ORDER**

Josiah R. Wolcott, Esquire, Connolly Gallagher LLP, Newark, Delaware, 19711, Attorney for Plaintiffs, Kelly Root and Thomas Joyce.

John G. Harris, Esquire, and Peter C. McGivney, Esquire, Berger Harris LLP, Wilmington, Delaware, 19801, Attorneys for Defendants Threshold Brands, LLC and MaidPro Franchise, LLC.

Shae Chasanov, Esquire, Tybout, Redfearn & Pell, Wilmington, Delaware, 19899, Attorney for Defendant MaidPro Wilmington.

Periann Doko, Esquire, Kent McBride, Wilmington, Delaware, 19809, Attorney for Defendants Cash In Jewelry and Pawn, Inc. and Juan Caride.

**SCOTT, J.**

1

## INTRODUCTION

Before the Court is Defendants Threshold Brands, LLC and Maidpro Franchise, LLC's Motion to Dismiss Kelly Root and Thomas Joyce's ("Plaintiffs") Second Amended Complaint. On November 1, 2022, the parties filed a Stipulation of Dismissal as to Defendant Threshold Brands, LLC. This Court now assesses the Motion to Dismiss as applied to MaidPro Franchise, LLC ("MaidPro"). For the following reasons, MaidPro's Motion to Dismiss is **GRANTED** as for all claims.

## BACKGROUND/ALLEGED FACTS

MaidPro Franchise, LLC is the franchisor of the MaidPro brand. Plaintiffs' Second Amended Complaint alleged *Respondeat superior*/vicarious liability, negligent hiring, civil conspiracy, and intentional/negligent infliction of emotional distress stemming from MaidPro Wilmington's former employee, Daisy Perez ("Ms. Perez"), entered their home through an unlocked door and stealing valuables. Plaintiffs allege MaidPro can be held liable as franchisors because MaidPro controls the daily operations of MaidPro Wilmington, the specific franchisee who hired Ms. Perez, because the franchisors require franchisees to use the set models and systems established.

On or about June 13, 2018, MaidPro Wilmington hired Ms. Perez. On June 22, 2018, due to the findings of her background report, MaidPro Wilmington terminated Ms. Perez, ending their employer/employee relationship.

In October of 2018, Plaintiffs, while they were on vacation, claim Ms. Perez unlawfully entered their home and stole personal property. Ms. Perez has been held criminally liable for the crimes committed against Plaintiffs.

On May 18, 2020, Plaintiffs filed a Complaint, which was amended on December 9, 2020, against Defendants. On April 14, 2021, MaidPro Wilmington and High Five Services Inc.[1] filed a Motion to Dismiss relying on facts outside of the pleadings, Ms. Perez's deposition testimony, affidavit from President of MaidPro Wilmington, and employment document regarding an employee's introductory period, consideration of these exhibits/testimony goes beyond the scope of the pleadings. The Court denied MaidPro Wilmington's Motion to Dismiss because the Motion would be more appropriately filed as a Motion for Summary Judgment. The amended complaint was subsequently amended, Second Amended Complaint, again on June 1, 2022. On July 28, 2022, this Motion was filed by Threshold and MaidPro, entities separate and apart from MaidPro Wilmington. Counsel for Defendant MaidPro Wilmington and Counsel for Defendants Cash In Jewelry and Pawn, Inc. and Juan Caride have indicated they do not oppose this Motion. Plaintiffs responded to this Motion in Opposition on August 29, 2022. Because this Motion does not rely on fact outside of the pleadings, this Court finds this Motion was appropriately filed

---

[1] High Five Services, Inc. was released from this litigation in the Second Amended Complaint.

3

as a Motion to Dismiss, and the Court can make its findings based on the allegations contained within the Second Amended Complaint. On November 1, 2022, Plaintiffs filed a Stipulation of Dismissal as to Defendant Threshold Brands, LLC, allowing this Court to assess the Motion as to MaidPro only.

## STANDARD OF REVIEW

A motion to dismiss, brought pursuant to Superior Court Rule 12(b)(6), for failure to state a claim upon which relief can be granted is appropriate only when there appears to be no reasonably conceivable set of circumstances susceptible of proof under the complaint.[2] When determining whether to grant the motion, the Court must accept all well-pled allegations in the complaint as true.[3] In addition, the Court is limited to the allegations in the complaint; "[i]f the moving party provides documents with the motion to dismiss, and the Court considers those materials in addition to the complaint, the motion to dismiss is converted to a motion for summary judgment, and the parties may expand the record."[4] Where those documents are integral to the plaintiff's claims and incorporated into the complaint, the motion to dismiss will not be converted into a motion for summary judgment.[5]

---

[2] *Spence v. Funk*, 396 A.2d 967, 968 (Del.1978).
[3] *Id.*
[4] *Spector v. Melee Entertainment LLC*, 2008 WL 362125, *2 (Del . Super); Eden v. *Oblates of St. Francis de Sales*, 2006 WL 3512482, *3 (Del.Super.).
[5] *Willis v. City of Rehoboth Beach*, 2004 WL 2419143, *1, n. 1 (Del.Super.)

**DISCUSSION**

*Respondeat superior/vicarious liability*

For Plaintiffs' claims to survive this Motion, they must have alleged facts in their Second Amended Complaint that would constitute *respondeant superior* liability. An employer is liable for the tortuous acts of an employee under *Respondent superior* if the acts are performed "within the scope of employment."[6] "Conduct is within the scope of employment if it (i) is of the type the employee was hired to perform; (ii) takes place 'within the authorized time and space limits'; and (iii) is at least partially motivated by a purpose to serve the employer."[7] "The question of whether conduct is within the scope of employment is generally a question for the jury, unless the facts are so clear that they must be decided as a matter of law."[8] Therefore, Plaintiffs' must have alleged the robbery was within the scope of employment.

In *Draper*, the court approved the Restatement of Agency (2d), § 228, which sets forth factors which should be considered in determining whether unauthorized conduct is within the scope of employment. They include such factors as whether or

---

[6] *Drainer v. O'Donnell*, No. CIV.A. 94C-08-062, 1995 WL 338700, at *1 (Del. Super. Ct. May 30, 1995)
[7] *Id.* (citing *Wilson v. Joma, Inc.*, 537 A.2d 187, 189 (Del.1988)).
[8] *Id.* (citing *Draper v. Olivere Paving & Constr. Co.*, 181 A.2d 565, 570 (Del.1962)).

5

not the act is one commonly done by such servants; the time, place and purpose of the act; whether or not the act is outside the enterprise of the master; whether or not the master has reason to expect that such an act will be done; the similarity in quality of the act done to the act authorized; the extent of departure from the normal method of accomplishing an authorized result; and whether or not the act is seriously criminal.[9]

Plaintiffs state that Ms. Perez was not an employee of MaidPro Wilmington at the time of the burglary as they contend on June 22, 2018, Ms. Perez was terminated. The burglary did not occur until October of 2018, therefore Ms. Perez was no longer an employee at the time of the act. As a matter of law, Ms. Perez was not acting in the scope of her employment with Defendants. To make a finding that the unauthorized conduct is not within the scope of employment the Court looks to the factors outlined in the Restatement 2nd. The act of breaking into a home and stealing items is certainly not one commonly done by a housecleaner. The time, place and purpose of the act was to further Ms. Perez's own interests and happened months after her employment with Defendants ended. The act is outside the enterprise of the master as the enterprise of Defendants is housecleaning. Defendants had no reason to expect that such an act will be done. There is no similarity in quality of the act

---

[9] *Simms v. Christina Sch. Dist.*, 2004 WL 344015, at *5 (Del.Super.) (citing *Draper v. Olivere Paving & Const. Co.*,440, 181 A.2d 565, 569 (1962)

done to the act authorized. There was an extreme departure from the normal method of accomplishing an authorized result. And the act is seriously criminal. None of the following factors support the Court finding Mr. Perez burglarizing Plaintiffs' home was in the scope of employment with her former employer. Therefore, because Plaintiffs state Ms. Perez was not employed by MaidPro Wilmington at the time of the criminal activity and there is no claim made regarding the criminal act being within Ms. Perez's scope of her employment from June of 2018, the *Respondeat superior*/vicarious liability claim is dismissed.

Additionally, Plaintiffs claims fail because they are attempting to hold MaidPro, a parent company, liable for the acts of their subsidiary, MaidPro Wilmington. To hold a parent company liable for the activities of its subsidiaries, plaintiff must allege that the parent company's control over the subsidiary is actual, participatory, and total.[10] Here, Plaintiffs fail to allege MaidPro's control over MaidPro Wilmington was actual, participatory, and total, therefore, MaidPro is not liable for MaidPro Wilmington's actions.

### *Negligent hiring*

An employer is liable for negligent hiring or supervision where "the employer is negligent in giving improper or ambiguous orders or in failing to make proper

---

[10] *J.E. Rhoads & Sons, Inc. v. Ammeraal, Inc.*, 1988 WL 32012, at *4 (Del. Super. Mar. 30, 1988).

regulations, or in the employment of improper persons involving risk of harm to others, or in the supervision of the employee's activity."[11]

According to this Court, to have stated a claim for negligent hiring, Plaintiffs needed to allege MaidPro was on notice of Ms. Perez's tortious behavior at the time she was hired.[12] Plaintiffs have failed to allege MaidPro had knowledge of Ms. Perez's tortious behavior at the time she was hired. In fact, Plaintiffs allege she was fired by MaidPro Wilmington due to the findings of her background check. The acts of MaidPro Wilmington are not extended to MaidPro as Plaintiffs failed to allege liability of MaidPro as a parent company. For this reason, Plaintiffs' negligent hiring claim is **DISMISSED.**

### *Civil Conspiracy*

Delaware law imposing liability for civil conspiracy is well settled. Plaintiffs must have alleged the following to survive this Motion:

(1) A confederation or combination of two or more persons;
(2) An unlawful act done in furtherance of the conspiracy; and
(3) Actual damage.[13]

---

[11] *Id.* at *8 (Del.Super.) (citing *Knerr v. Gilpin, Van Trump & Montgomery, Inc.*, 1998 WL 40009 (Del.Super.)).

[12] *Fanean v. Rite Aid Corp. of Delaware*, 984 A.2d 812, 826 (Del. Super. Ct. 2009).

[13] *McLaughlin v. Copeland*, 455 F.Supp. 749, 752 (D.Del.1978), aff'd, 595 F.2d 1213 (3d Cir.1979).

Plaintiffs fail to allege an unlaw act done in furtherance of the conspiracy on the part of MaidPro. On this point, Plaintiffs claim only all the named defendants in this case "combined to wrongfully interfere" with Plaintiffs possession of Personal Property and deprive them of it. This allegation does not allege MaidPro participated in an unlawful act done in furtherance of the conspiracy to burglarize Plaintiffs' home. Therefore, on the Civil Conspiracy Claim is **DISMISSED.**

***Intentional/Negligent Infliction of Emotional Distress***

**IIED**

In Delaware, the elements of the tort of intentional infliction of emotional distress ("IIED") are defined by Section 46 of the Restatement (Second) of Torts.[14] According to the Restatement, an IIED claim arises when "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm."[15] Extreme and outrageous conduct is that which "exceeds the bounds of decency and is regarded as intolerable in a civilized community."[16] The Court considers the Restatement's comment as to what conduct might be sufficiently extreme and outrageous to warrant IIED liability:

---

[14] See *Mattern v. Hudson*, 532 A.2d 85, 85–86 (Del.Super.Ct.1987); *Esposito v. Townsend*, 2013 WL 493321, at *6 (Del.Super.Ct. Feb. 8, 2013).

[15] *Fanean v. Rite Aid Corp. of Delaware*, 984 A.2d 812, 818 (Del.Super.Ct.2009).

[16] *Thomas v. Harford Mut. Ins. Co.*, 2004 WL 1102362, at *3 (Del.Super.Ct. Apr. 7, 2004).

The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim 'Outrageous!'[17]

Plaintiffs have failed to allege extreme and outrageous behavior attributable to MaidPro. The Court will not find the employment of an individual, who is then discharged and then four months later commits a crime against Plaintiffs as extreme and outrageous behavior on the part of MaidPro. Such a finding would ultimately hold every parent company responsible for emotional damage caused by its subsidiary's former employees, which this Court is not prepared to find. Because Plaintiffs have failed to allege extreme and outrageous behavior, the IIED claim is **DISMISSED.**

**NIED**

To survive this Motion, Plaintiffs must have alleged the elements of NIED, which are "(1) negligence causing fright to someone; (2) in the zone of danger; (3) producing physical consequences to that person as a result of the contemporaneous

---

[17] *Farmer v. Wilson*, 1992 WL 331450, at *4 (Del.Super.Ct. Sept. 29, 1992) (citing Restatement (Second) of Torts § 46 cmt. d).

10

shock."[18] The zone of danger "is that area where the negligent conduct causes the victim to fear for his or her own safety."[19] Here, Plaintiffs are attempting to recover for NIED against MaidPro for its subsidiary's former employee breaking into their homes months after the employee was no longer associated with MaidPro. Looking at the entirety of Plaintiffs Second Amended Complaint, Plaintiffs do not allege any of the necessary elements of NIED. Specifically, Plaintiffs do not allege there was negligence causing fright to Plaintiffs, that they were within an area where the negligent conduct caused fear for Plaintiffs safety, nor do Plaintiffs allege any physical consequences from the shock that could possibly be attributable to MaidPro. Therefore, the NIED claim is **DISMISSED.**

## CONCLUSION

For the foregoing reasons, MaidPro's Motion to Dismiss is **GRANTED** as for all claims.

**IT IS SO ORDERED.**

/s/ Calvin L. Scott
**Judge Calvin L. Scott, Jr.**

---

[18] *Snavely v. Wilmington Med. Ctr.*, 1985 WL 552277, at *3 (Del.Super.Mar.18, 1985).
[19] *Doe v. Green*, 2008 WL 282319, at *1.