## McGEHEE v. INSURANCE CO. OF NORTH AMERICA.

(Circuit Court of Appeals, Fifth Circuit. January 7, 1902.)

### No. 1,036.

LIBEL—PRIVILEGED COMMUNICATIONS—ALLEGATIONS IN PLEADINGS.

Allegations in a defendant's pleading imputing criminal or fraudulent acts to the plaintiff, where relevant and pertinent as matters of defense, —such as allegations charging the plaintiff in an action on a fire insurance policy with having intentionally burned the insured property, or with having fraudulently overstated its value in his proofs of loss,— are absolutely privileged, and cannot be made the ground of an action for libel.

McCormick, Circuit Judge, dissenting, holds that the effect of the privilege is merely to relieve the publication from the implication of malice, and cast the burden of proving express malice on the plaintiff.

In Error to the Circuit Court of the United States for the Eastern District of Louisiana.

J. F. Pierson, for plaintiff in error.

Chas. P. Fenner and E. B. Kruttschnitt, for defendant in error.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

PER CURIAM. The suit of John S. McGehee v. The Insurance Company of North America, No. 12,008, of the docket of the circuit court of the United States, Eastern district of Louisiana, was brought to recover on a fire insurance policy. The allegations in the answer filed in that suit, to the effect that the plaintiff had intentionally burned or procured to be burned the property, goods, and effects claimed to have been lost, and. that in the proofs of loss the plaintiff had grossly and fraudulently overestimated their value, whereby the policy had been avoided, were relevant and pertinent as matters of defense, and are absolutely privileged. See Townsh. Sland. & L. § 221; Folkard's, Starkie, Sland. § 196; Odgers, Lib. & Sland. p. 141; Wilson v. Sullivan, 81 Ga. 238, 7 S. E. 274; Gains v. Insurance Co. (Ky.) 47 S. W. 884; Abbott v. Bank (Wash.) 56 Pac. 376; Sherwood v. Powell (Minn.) 63 N. W. 1103, 29 L. R. A. 153, 53 Am. St. Rep. 614; Jones v. Brownlee (Mo.) 61 S. W. 795, 53 L. R. A. 445; Johnson v. Brown, 13 W. Va. 119; Shelfer v. Gooding, 47 N. C. 181; Gardemal v. McWilliams, 43 La. Ann. 457, 9 South. 106, 26 Am. St. Rep. 195.

The judgment of the circuit court is affirmed.

McCORMICK, Circuit Judge (dissenting). I do not concur in the decision of the court in this case. The rule which the opinion announces is supported by the decisions of the state courts in certain of the states, and has been accepted by some of the more recent text writers. In my opinion, it has not been approved by the supreme court of Louisiana. I rest my dissent on what I recognize as the controlling authority of the supreme court, announced in the case of White v. Nicholls, 3 How. 266, 11 L. Ed. 591. In that case the supreme court propounded the law which, in my opinion, is applicable to the case before us, in the following language:

"We have thus taken a view of the authorities which treat of the doctrines of slander and libel, and have considered those authorities particularly with reference to the distincti n they establish between ordinary instances of slander, written and unwritten, and those which have been styled 'privileged communications'; the peculiar character of which is said to exempt them from inferences which the law has created with respect to those cases that do not partake of that character. · Our examination. extended as it may seem to have been, has been called for by the importance of. a subject most intimately connected with the rights and happiness of individuals, as it is with the quiet and good order of society. The investigation has conducted us to the following conclusions, which we propound as the law applicable thereto: (1) That every publication, either by writing, printing, or pictures, which charges upon or imputes to any person that which renders him liable to punishment, or which is calculated to make him infamous, or odious, or ridiculous, is prima facie a libel, and implies malice in the author and publisher towards the person concerning whom such publication is made. Proof of malice, therefore, in the cases just described, can never be required of the party complaining beyond the proof of the publication itself. Justification, excuse, cr extenuation, if either can be shown, must proceed from the defendant. (2) That the description of cases recognized as privileged communications must be understood as exceptions to this rule, and as being founded upon some apparently recegnized obligation or motive, legal, moral, or social, which may fairly be presumed to have. led to the publication, and therefore prima facie relieves it from that just implication from which the general rule of the law

is deduced. The rule of evidence as to such cases is accordingly so far changed as to impose it on the plaintiff to remove those presumptions flowing from the seeming obligations and situations of the parties, and to require of him to bring home to the defendant the existence of malice as the true motive of his conduct. Beyond this extent no presumption can be permitted to operate, much less be made to sanctify the indulgence of malice, however wicked, however express, under 'the protection of legal forms. We conclude, then, that malice may be proved, though alleged to have existed in the proceedings before a court, or legislative body, or any other tribunal or authority, although such court, legislative body, or other tribunal may have been the appropriate authority for redressing the grievance presented to it; and that proof of express malice in any written publication, petition, or proceeding addressed to such tribunal will render that publication, petition, or proceeding libel us in its character, and actionable, and will subject the author and publisher thereof to all the consequences of libel. And we think that in every case of a proceeding like those just enumerated falsehood and the absence of probable cause will amount to proof of malice."

The report of the decision in that case does not note that any 'of the judges dissented from the rule propounded in the opinion. The cases arose in the District of Columbia, and were tried in the circuit court for that district. The publication on which they were based occurred on the 26th of June, 1841, and the actions were brought on November 18th of that year. . The cases came on for trial in November, 1842, and the decision of the supreme court was rendered in the January term, 1845. The court, as constituted when the decision was rendered, consisted of Mr. Chief Justice Taney and Associate Justices Story, McLean, Wayne, Catron, McKinley, Daniel, and Nelson. In my opinion, the doctrine and authority of that case has not been questioned by the supreme court in any of its subsequent decisions.

The very distinguished counsel for the defendant in this case urges with zealous confidence that the case of Vogel v. Gruaz, 110 U. S., 311, 4 Sup. Ct. 12, 28 L. Ed. 158, is in conflict with the case of White v. Nicholls. As I read the opinion in the case against Gruaz, it not only does not expressly weaken the authority of White v. Nicholls, but there is nothing in the opinion which by reasonable implication tends to qualify or limit, much less renounce, the doctrine and rule propounded in White v. Nicholls. I therefore hold that the circuit court erred in sustaining the exception "no cause of action," and in dismissing the suit of the plaintiff, and that its judgment should be reversed, and the cause remanded, with directions to the circuit court to award the plaintiff a new trial.