Herman K. BURKE, Appellant,

v.

Jerry MILLER, M.D., Appellee.

No. 76–1154.

United States Court of Appeals,
Fourth Circuit.

Argued Feb. 6, 1978.

Decided July 6, 1978.

Paul G. Turner, Richmond, Va. (Christian, Barton, Epps, Brent & Chappell, Richmond, Va., on brief), for appellant.

D. Patrick Lacy, Jr., Richmond, Va. (Bell, Ellyson, Wilkins & Baliles, Richmond, Va., Ford C. Quillen, Quillen & Carter, Gate City, Va., M. Lacy West, Kingsport, Tenn., Anthony F. Troy, Atty. Gen. of Va., James E. Ryan, Jr., Deputy Atty. Gen., Richmond, Va., on brief), for appellee.

Before BRYAN, Senior Circuit Judge, and WINTER and WIDENER, Circuit Judges.

ALBERT V. BRYAN, Senior Circuit Judge:

Following his conviction in Virginia for murder, Herman K. Burke sued Dr. Jerry Miller, the State Medical Examiner for the county, in the District Court charging him with violating his civil rights by falsely testifying at the trial and thereby entitling him to damages under 42 U.S.C. § 1983. A claim was also pressed under 42 U.S.C. § 1985, averring a conspiracy by the doctor with the prosecuting attorney to deprive Burke of a fair trial.[1] Defendant moved under F.R.Civ.P. 12(b)(6) to dismiss the action as barred by the State statute of limitations as well as by his immunity from

1. "§ 1983.

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

"§ 1985.

. . . . .

(2) If . . . two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the

due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, . . .;

(3) . . . in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators."

civil suit seeking damages for acts done in his official capacity. The Court, without passing on the claim of immunity, held the action to be barred by the statute. *Burke v. Miller,* Civil Action No. 750868 (W.D. Va. Jan. 9, 1976).

On Burke's appeal we heard argument upon the limitations question but, without deciding it, thereafter requested counsel to brief the issue of the immunity, for we believed decision of that question imperative presently and prospectively.

Taking the stand as a witness at the instance of the prosecution, Dr. Miller told of his driving on the highway and meeting by chance with Burke in a car with his wife. A previous acquaintance, Burke stopped, came to the doctor's car window and said he had "just shot a man and he is up at my mail box. Would you see what you could do for him?" He observed Burke to be in quite an anxious and nervous state, very pale. Whereupon Dr. Miller turned his car and drove to where Burke had asked him to go. There he saw the victim of the shooting, Walter Ferguson, lying on the road dead. Examination of the body disclosed that death had resulted from a gun shot through his chest.

Our theorem is that *any* witness in a State judicial proceeding enjoys an absolute immunity—not qualified in any degree—from liability under the pleaded Civil Rights Acts. In this conclusion our lodestar is *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). Fundamentally, it reaffirms "that § 1983 [and, we believe, § 1985 as well] [2] is to be read in harmony with general principles of tort immunities and defenses rather than in derogation of them." 424 U.S. at 418, 96 S.Ct. at 989. From there the opinion tracks the previous applications of this concept: the absolute immunity of judges acting within their realms, exampled in *Bradley v. Fisher,* 13 Wall. 335, 351, 20 L.Ed. 646 (1872); *Pier-*

son *v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967), and *Stump v. Sparkman,* 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978), and the unconditional exemption of legislators, confirmed in *Tenney v. Brandhove,* 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951). *Imbler* itself clothed a State prosecutor with entire and unrestrained freedom from liability under § 1983 when acting within his official sphere. In this the Court's standard of determination was "the immunity historically accorded the relevant official at common law and the interests behind it." 424 U.S. at 421, 96 S.Ct. at 990.

■ Still adhering to the chart of *Imbler,* we next look for the common law doctrine. That under it inviolable immunity is accorded witnesses is attested by a plethora of precedent. So familiar to the bar are these authorities, that in the interest of time we believe citations, without quotations, will suffice: *Brawer v. Horowitz, supra,* 535 F.2d at 836 *et seq.*; *Briggs v. Goodwin,* 186 U.S.App.D.C. 179, 569 F.2d 10 (1977), *cert. denied* —— U.S. ——, 98 S.Ct. 3089, 57 L.Ed.2d 1133 (1978), in both the majority and dissenting opinions; [3] and *Blevins v. Ford,* 572 F.2d 1336, 1338 (9 Cir. 1978).

■ With this background we, to borrow from *Imbler* again, "must determine whether the same considerations of public policy that underlie the common-law rule likewise countenance absolute immunity under § 1983. We think they do." 424 U.S. at 424, 96 S.Ct. at 992. The reason is that the participation of the defendant doctor in our case was an " 'integral part of the judicial process.' " 424 U.S. at 430, 96 S.Ct. at 995. Again, his "activities were intimately associated with the judicial phase of the criminal process, and thus were functions to which the reasons for absolute immunity apply with full force." *Id.* (footnote omitted).

**2.** *Cf. Brawer v. Horowitz,* 535 F.2d 830, 840 (3 Cir. 1976).

**3.** The primary and dominant question in *Briggs* was whether a Special Attorney of the Department of Justice for investigation of Federal

offenses was within the immunity granted a prosecuting attorney, but both opinions elaborately cited to the law pertaining to the liability of witnesses premised on their trial testimony.

Ample safeguards exist against abuse of this witness privilege. The restraints upon witnesses are precisely those outlined in *Imbler* with regard to prosecutors, and is aptly put in the opinion:

"We emphasize that the immunity of prosecutors from liability in suits under § 1983 does not leave the public powerless to deter misconduct or to punish that which occurs. This Court has never suggested that the policy considerations which compel civil immunity for certain governmental officials also place them beyond the reach of the criminal law. Even judges, cloaked with absolute civil immunity for centuries, could be punished criminally for willful deprivations of constitutional rights on the strength of 18 U.S.C. § 242, the criminal analog of § 1983. *O'Shea v. Littleton,* 414 U.S. 488, 503, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974); *cf. Gravel v. United States,* 408 U.S. 606, 627, 92 S.Ct. 2614, 33 L.Ed.2d 583 (1972). . . . These checks undermine the argument that the imposition of civil liability is the only way to insure that prosecutors are mindful of the constitutional rights of persons accused of crime." 424 U.S. at 428–29, 96 S.Ct. at 994 (footnote omitted).

The judgment of the District Court dismissing the present case will be sustained on the ground of the defendant-appellee's immunity from suit. No ruling is made on the limitations defense.

Affirmed.

WINTER, Circuit Judge, concurring:

I concur in the judgment because I think that the district court was plainly correct in sustaining the defendant's plea of limitations. I write separately, not only to articulate my views on this point, but also to express my disapproval of the basis of the majority's ground of decision and my doubts about its correctness.

I.

Plaintiff's suit alleging violations of 42 U.S.C. §§ 1983 and 1985 arose out of events which occurred on July 25 or 26, 1972. The suit was filed on October 16, 1975, more than three years after the events which allegedly constituted a violation of plaintiff's civil rights. The alleged causes of action all arose in Virginia.

With respect to Virginia causes of action arising under § 1983, we held them time-barred under Virginia's then two-year statute of limitations in *Almond v. Kent,* 459 F.2d 200 (4 Cir. 1972). Subsequent to *Almond,* Virginia has not extended the period of limitations. Indeed, Virginia has sought to contract it. *See* Va. Code § 8–24 (1975 Repl. Vol.) repealed Ch. 617, 1977 Va. Acts. I perceive no basis on which it may be said that the running of the Virginia statute was tolled. It follows that the district court correctly ruled that defendant's plea of limitations with respect to plaintiff's alleged § 1983 cause of action was time-barred.

I think that plaintiff's alleged § 1985 cause of action was similarly time-barred. I agree with the district court that "the considerations which persuaded the court in *Almond v. Kent* . . . to apply the Virginia two-year limitation period to § 1983 actions are equally applicable to plaintiff's conspiracy [§ 1985] claim," and again I can find no basis on which to think that the running of the statute was tolled.

Even if I am incorrect in concluding that plaintiff's § 1985 claim was time-barred, that claim was so patently frivolous that it should be disregarded. Plaintiff alleged that defendant, a state medical examiner who testified for the prosecution at the trial in which plaintiff was convicted of murder, conspired with the prosecuting attorney to give perjured testimony which deprived him of a fair trial. He did not allege, however, a denial of equal protection of the laws.

Plaintiff's reference to § 1985 was general; he did not specify the subsection or subsections on which he relied. To my mind, §§ 1985(2) and 1985(3) are the only subsections which could conceivably apply to this case. But I cannot read the proscription in § 1985(2) against a conspiracy to "influence the verdict . . . of any

. . . juror," to mean other than by "force, intimidation, or threat" and thus to exclude influence by perjury. *See Brawer v. Horowitz,* 535 F.2d 830, 840 (3 Cir. 1976). To the extent that § 1985(2) and § 1985(3) proscribe conspiracies to impede "the due course of justice" and "equal protection of the laws," respectively, plaintiff's failure to allege a denial of equal protection is fatal; he therefore had no cause of action under them. *See Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971).

## II.

While statutes of limitations are not jurisdictional, i. e. they bar suit, if pleaded as defense, but do not destroy the original cause of action, I think that it behooves a court not to make substantive pronouncements on what was correctly asserted to be a stale claim.* That the instant case is stale belies the majority's assertion that decision of the question of the immunity of a witness from civil suit in the instant context is "imperative presently." While decision may be "imperative . . . prospectively," it is axiomatic that courts do not give advisory opinions.

But since the majority explicitly declines to rule on the issue of limitations and persists in deciding the immunity issue, I state my doubts about the correctness of its decision. In my view, under the facts alleged by plaintiff, defendant would be liable under § 1983 unless he has absolute immunity as a witness. Of course a witness is generally afforded absolute immunity in ordinary litigation, as the majority documents. But should the rule of *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), establishing the absolute immunity of a prosecutor from liability under § 1983, be extended to a state employee who is a witness in a state prosecution and who allegedly perjures himself to achieve improperly a conviction? I lack the certainty with which the majority responds affirmatively.

In *Briggs v. Goodwin,* 186 U.S.App.D.C. 179, 569 F.2d 10 (1977), *cert. denied,* —— U.S. ——, 98 S.Ct. 3089, 56 L.Ed.2d 1133 (1978), our sister circuit had occasion to touch on this question in a case in which the witness, who was one of the prosecutors, falsely testified before the district court that there were no government informers among potential witnesses who had been subpoenaed to appear before an existing grand jury. The prosecutor had been called as a witness by the court, asked the single question by the court and not permitted to be cross-examined.

When the prosecutor was later sued for his part in violating plaintiff's civil rights by reason of his false testimony, he pleaded absolute immunity as a prosecutor under *Imbler.* The court rejected this claim. It held that he had only qualified immunity; *Imbler* established absolute immunity only so far as necessary to protect a prosecutor's discretion with respect to the initiation and conduct of particular cases but did not protect a prosecutor absolutely with regard to other "wide-ranging law enforcement investigations or general fact-finding expeditions." 186 U.S.App.D.C. at 189, 569 F.2d at 20.

Because the dissent in *Briggs* argued that the prosecutor should be afforded absolute immunity as a witness, the majority also dealt with this point. First, it stated that under the circumstances under which the prosecutor was called to testify and the manner in which he was examined, it thought that the record raised no issue of witness immunity; and moreover the district court had certified no question of witness immunity when it certified the question of prosecutorial immunity. But it went on to say that a question of witness immunity in an action under § 1983 raised a question of *federal* common law and that:

> [I]t is far from clear that . . . a witness should enjoy the same measure of immunity, regardless of whether the wrong of which he is accused rises to

---

* For the same reason, I regret that counsel were required to file supplemental briefs on the question of the immunity of a witness to civil

suit and to reargue their case, when they correctly perceived that the sole issue before us was one of whether the claims were stale.

constitutional dimension. Whatever the precise nature of the immunity accorded to witnesses at common law, that immunity applies without distinction to *any individual* serving as a witness in a judicial proceeding. On the other hand, where a constitutional infringement is alleged, the defendant-witness will almost invariably be a *Government official.* (At minimum, the "under color of law" requirement will assure some direct government involvement in the challenged testimony.) This is a crucial difference. Policy considerations counselling the insulation of *private citizens* from civil liability arising from their performance as witnesses do not apply with equal force when a complaint charges that constitutional rights have been violated by a *public employee* operating from the witness stand. (Emphasis in original.)

186 U.S.App.D.C. at 197, 569 F.2d at 28. *See Hilliard v. Williams,* 516 F.2d 1344, 1349 (6 Cir. 1975), *vacated on other grounds,* 424 U.S. 961, 96 S.Ct. 1453, 41 L.Ed.2d 729 (1976), *affirmed,* 540 F.2d 220 (6 Cir. 1976) (police officer held liable under § 1983 for giving misleading testimony in homicide trial).

The quoted comments identify a relevant and pertinent consideration not even mentioned in the majority's opinion. It may well be that, in balancing the inhibiting effect of possible harassment of civil suits on the performance of official duties by a government witness against a private citizen's right to redress a denial of constitutional right, the fact that the plaintiff seeks to redress a *constitutional* tort may tip the balance against absolute witness immunity. For it may well be concluded that the criminal penalties for perjury should not alone be deemed a sufficient safeguard to prevent the constitutional tort resulting from perjury by a witness testifying in a governmental capacity. And I question whether a witness willing to commit perjury and to risk prosecution would actually be deterred by the threat of a civil suit. These are problems that I find difficult to resolve. Certainly the majority does not persuade me that they are resolved correctly.