654 P.2d 888

**Lillian A. OVERMAN,
Plaintiff-Appellant,**

v.

**Milton G. KLEIN, Linda Caballero, Larry
Isom, Betty Phillips, and Mike Neher,
Defendants-Respondents.**

No. 13641.

Supreme Court of Idaho.

Oct. 27, 1982.

Rehearing Denied Dec. 28, 1982.

Ismael Chavez, Caldwell, for plaintiff-appellant.

David H. Leroy, Atty. Gen., Thomas C. Frost, Steven M. Parry, Deputy Attys. Gen., Boise, for defendants-respondents.

SHEPARD, Justice.

This is an appeal from an order dismissing plaintiff's complaint. Plaintiff-appellant, Lillian A. Overman, asserted causes of action under state tort law sounding in defamation and violation of the right to privacy against defendants-respondents, employees of the State Department of Health and Welfare, in both their individual and official capacities. A cause of action was also asserted alleging that under color of state law, that same conduct deprived plaintiff-appellant of her constitutional rights in violation of 42 U.S.C. § 1983. The trial court dismissed those claims based on state law, holding that as to the defendants' liability in their official capacities, notices as required under the Idaho Tort Claims Act, I.C. §§ 6–901 et seq., had not been timely served. As to the causes relating to the liability of the defendants in their individual capacities, the court held that since the alleged tortious conduct arose from filing an affidavit in a judicial proceeding, they enjoyed absolute immunity. As to the § 1983 cause of action, the court, applying federal law, held that the defendants were acting as witnesses and hence enjoyed absolute immunity from civil liability.

The litigation out of which the present cause of action arose was the subject of this Court's decision in *Overman v. Overman*, 102 Idaho 235, 629 P.2d 127 (1981). In January, 1978, Mrs. Overman obtained an uncontested divorce from her husband and therein was awarded custody of the couple's five minor children. In September, 1978, Mr. Overman petitioned for a modification of the divorce decree seeking custody of the children. He sought and obtained *ex parte* an immediate temporary change in custody for a period of ten days pending a hearing on his petition for a permanent change in custody. That motion for an *ex parte* temporary change in custody was supported by an affidavit of defendant-respondent Mike Neher, a social worker employed by the Idaho Department of Health and Welfare. It is that affidavit which allegedly constituted defamation and invasion of privacy, a violation of constitutional rights under the color of state law, and hence it is the basis of the instant action.

The affidavit was based on information contained in the files of the Department of Health and Welfare. It is recited that the affidavit is based on the personal involvement of the affiant, Neher, with Mrs. Overman and others upon the complaints received by the Department relating to the care of the children, and a home study and evaluation conducted by the Department. It is also related that the change of custody to the father was in conformance to the best interests and well-being of the children and that in the event such change of custody to the father was unsuccessful, the Department would seek to obtain custody under the Child Protective Act, I.C. §§ 16–1601 et seq. It is also recited that Mrs. Overman planned to leave the State of Idaho and take the children with her and thus beyond the jurisdiction of the court.

In brief, the facts supporting the conclusions of the affidavit were that the mother was leaving the children for prolonged periods of time, that the children were not regularly attending school, that the children were being physically abused, that the children were often left with strangers and that the children were not fed or clothed. In addition, it was stated that the mother had relinquished custody to a foster home and then reacquired custody through trickery and deceit.

As aforesaid, the district court *ex parte* granted a temporary change in custody for a period of ten days. Thereafter a plenary hearing was scheduled on Mr. Overman's petition for a permanent change in custody. Upon the motion of Mrs. Overman, such hearing was continued and ultimately a plenary hearing was held. Thereafter the court entered an order modifying the decree of divorce and granting Mr. Overman permanent care, custody and control of the children. An appeal was brought to this Court *not* from the court's modification of the decree to award permanent custody to Mr. Overman, but solely from the order granting temporary custody for a period of ten days. Upon appeal it was argued that any appeal from the order granting temporary custody was moot, since the court had later entered a permanent change of custody order and no appeal was taken from that order. Nevertheless, this Court proceeded to examine the cause on its merits, held that the trial court's findings relating to the necessity to change the custody of the children to the father was supported by the evidence, and upheld both orders of the district court. *See Overman v. Overman, supra.*

In February, 1979, this action was filed against Neher and four other employees of the Department, who, it was alleged, acted as Neher's supervisors. It was asserted that defendants were under a duty to maintain the confidentiality of the records of the Department of Welfare and to preserve the privacy of the family, and that disclosure of the information contained in the Neher affidavit constituted grounds for relief under the three causes of action. As aforesaid, the complaint was dismissed.

As to the causes of action against the defendants in their official capacities for defamation and violation of the right to privacy, those were dismissed on the basis of the failure of Mrs. Overman to comply with the notice of claim provision of the Idaho Tort Claims Act, I.C. § 6–905. That section provides:

"6–905. Filing claims against state or employee—Time.—All claims against the state arising under the provisions of this act and all claims against an employee of the state for any act or omission of the employee within the course or scope of his employment shall be presented to and filed with the secretary of state within one hundred twenty (120) days from the date the claim arose or reasonably should have been discovered, whichever is later."

I.C. § 6–908 provides:

"6–908. Restriction on allowance of claims.—No claim or action shall be allowed against a governmental entity or its employee unless the claim has been presented and filed within the time limits prescribed by this act."

In accordance with I.C. § 6–908, compliance with the notice of claim requirement is a mandatory condition precedent to bringing suit against the state or its employee. *Newlan v. State,* 96 Idaho 711, 535 P.2d 1348, *appeal dismissed sub nom., Agost v. Idaho,* 423 U.S. 993, 96 S.Ct. 419, 46 L.Ed.2d 367 (1975); *Jacaway v. State,* 97 Idaho 694, 551 P.2d 1330 (1976). The notice of claim requirement of I.C. § 6–905 serves the purposes of providing an opportunity for parties to resolve their dispute through settlement without resort to the courts, allowing authorities to conduct a timely investigation of the claimant's cause of action to determine the extent of the state's liability, if any, and allowing the state to prepare its defenses. *Farber v. State,* 102 Idaho 398, 630 P.2d 685 (1981).

The district court construed the complaint against the defendants-respondents in their official capacities as, in essence, a suit against the state. The trial court was correct. *Grant Construction Co. v. Burns,* 92 Idaho 408, 443 P.2d 1005 (1968); *Biscar v. University of Wyoming Board of Trustees,* 605 P.2d 374 (Wyo.1980). We therefore affirm the order of the trial court dismissing plaintiff's complaint as it relates to the defendants-respondents in their official capacities. *Newlan v. State, supra; Jacaway v. State, supra.*

As to the causes of action against the defendants-respondents in their individual capacities, such were dismissed by the

trial court on the basis of witness immunity. Defendants-respondents argue that the trial court's dismissal of the causes of action against them in their individual capacities was proper on the alternative ground that I.C. § 6–905, requiring a timely notice of claim, applies not only to suits against the state, but also to suits against state employees for their acts or omissions in the course or scope of their employment. We agree.

■ It is alleged in the complaint that at all times material to the cause of action, defendants-respondents acted within the course and scope of their employment.

As originally enacted in 1971, I.C. § 6–905 provided:

"Filing claims against state—Time.—All claims against the state arising under the provisions of this act shall be presented to and filed with the secretary of state within one hundred twenty (120) days from the date the claim arose or reasonably should have been discovered, whichever is later.

*See* 1971 Idaho Sess.Laws, Ch. 150, § 5, p. 746. Thus, the original enactment did not require as a prerequisite to a suit against a state employee *as an individual* any notice of claim be filed with the Secretary of State. However, in 1976 the Tort Claims Act was comprehensively revised to provide for governmental liability "for money damages arising out of its negligent or otherwise wrongful acts or omissions and those *of its employees acting within the course and scope of their employment or duties* . . . ." I.C. § 6–903(a) (emphasis added). The statute further required the government to provide a defense to its employees and to *be responsible for the payment of any judgment on any claim against its employees,* arising out of any act or omission within the course and scope of their employment. At that same time, I.C. § 6–905 was amended to require a filing of a notice of claim with the Secretary of State for money damages against the state, and "against an employee of the state for any act or omission of the employee within the course or scope of his employment . . ." Also I.C. § 6–908 was amended to require the filing

of a claim in accordance with I.C. § 6–905 as a prerequisite to a suit against a governmental employee. *See* 1976 Idaho Sess. Laws, Ch. 309, p. 1062.

Here, the complaint affirmatively alleges that Neher and the other defendants-respondents were acting within the scope and course of their employment.

We note further that I.C. § 6–903(e) provides:

"For the purposes of this act and not otherwise, it shall be a rebuttable presumption that any act or omission of an employee within the time and at the place of his employment is within the course and scope of his employment and without malice or criminal intent."

Clearly the allegations of the complaint support rather than rebut the presumption, *i.e.,* that the action of Neher was in the scope and course of his employment. Hence, since I.C. § 6–908 requires the filing of a notice of claim, as a prerequisite to a suit against a governmental employee acting within the course and scope of his employment and no such claim was filed, we affirm the trial court's dismissal of the cause of action against defendants-respondents in their individual capacities on the basis of plaintiff's failure to file a notice of claim.

■ We turn now to consideration of the cause of action brought under 42 U.S.C. § 1983, which provides:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

■ The question of immunity from an action predicated upon 42 U.S.C. § 1983 is one of federal law. *Jones v. Marshall,* 528 F.2d 132 (2d Cir.1975); *Lynch v. Johnson,* 420 F.2d 818 (6th Cir.1970); *Ligon v. State*

*of Maryland,* 448 F.Supp. 935 (D.C.Md. 1977); *see also Martin v. Duffie,* 463 F.2d 464 (10th Cir.1972). The notice of claim requirements of I.C. § 6–905 are inapplicable to a cause of action brought under 42 U.S.C. § 1983. *Doe v. Ellis,* 103 Wis.2d 581, 309 N.W.2d 375 (1981); *Perrote v. Percy,* 452 F.Supp. 604 (E.D.Wis.1978). *See also Donovan v. Reinbold,* 433 F.2d 738 (9th Cir. 1970).

In the instant case the district court correctly relied upon *Blevins v. Ford,* 572 F.2d 1336 (9th Cir.1978), in holding that the defendants-respondents were immune from liability. The court in *Blevins* stated:

> "Blevins' complaint against Ford was properly dismissed. For reasons of public policy, those who testify in the course of judicial proceedings have long enjoyed absolute immunity from civil suits based upon their words, whether perjurious or not. *Brawer v. Horowitz,* 3 Cir., 1976, 535 F.2d 830, 836–37, holds that this immunity applies in a civil rights action such as this. We agree." *Id.* at 1338.

The holding in *Blevins* clearly represents the majority rule among federal courts. *Charles v. Wade,* 665 F.2d 661 (5th Cir. 1982); *Briscoe v. LaHue,* 663 F.2d 713 (7th Cir.1981), *cert. granted,* 455 U.S. 1016, 102 S.Ct. 1708, 72 L.Ed.2d 132 (1982); *Myers v. Bull,* 599 F.2d 863 (8th Cir.1979), *cert. denied,* 444 U.S. 901, 100 S.Ct. 213, 62 L.Ed.2d 138 (1979); *Burke v. Miller,* 580 F.2d 108 (4th Cir.1978), *cert. denied,* 440 U.S. 930, 99 S.Ct. 1268, 59 L.Ed.2d 487 (1979); *Bennett v. Passic,* 545 F.2d 1260 (10th Cir.1976); *Brawer v. Horowitz,* 535 F.2d 830 (3d Cir. 1976). *But see Briggs v. Goodwin,* 569 F.2d 10 (D.C.Cir.1977), *cert. denied,* 437 U.S. 904, 98 S.Ct. 3089, 57 L.Ed.2d 1133 (1978); *Hilliard v. Williams,* 516 F.2d 1344 (6th Cir. 1975), *vacated on other grounds,* 424 U.S. 961, 96 S.Ct. 1453, 47 L.Ed.2d 729 (1976), *aff'd after remand,* 540 F.2d 220 (6th Cir. 1976).

While the apparent split of authority among the circuits has not been resolved by the United States Supreme Court, it stated in *Owen v. City of Independence,* 445 U.S. 622, 638, 100 S.Ct. 1398, 1409, 63 L.Ed.2d 673 (1980): "[w]here the immunity claimed by the defendant was well established at common law at the time § 1983 was enacted, and where its rationale was compatible with the purposes of the Civil Rights Act, we have construed the statute to incorporate that immunity." *See also Imbler v. Pachtman,* 424 U.S. 409, 421, 96 S.Ct. 984, 990, 47 L.Ed.2d 128 (1976), where the Court stated that its findings of immunity from § 1983 liability have been "predicated upon a considered inquiry into the immunity historically accorded the relevant official at common law and the interests behind it." *Cf. Tenney v. Brandhove,* 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951) (legislative immunity).

■ In the English common law, witnesses have enjoyed absolute immunity from civil liability from their testimony. In 1772 the comprehensive rule was announced by Lord Mansfield: "neither party, witness, counsel, jury, or Judge, can be put to answer, civilly or criminally, for words spoken in office." *The King v. Skinner,* 98 Eng. Rep. 529, 530 (K.B.1772); *See* Veeder, *Absolute Immunity in Defamation: Judicial Proceedings,* 9 Colum.L.Rev. 463 (1909). That rule of witness immunity has been incorporated into the American common law with the qualification that the statements of a witness must be relevant to the court's inquiry. *E.g., Richeson v. Kessler,* 73 Idaho 548, 255 P.2d 707 (1953); *Sacks v. Stecker,* 60 F.2d 73 (2d Cir.1932); *Andrews v. Gardiner,* 224 N.Y. 440, 121 N.E. 341 (1918); *Chambliss v. Blau,* 127 Ala. 86, 28 So. 602 (1900); *Cooley v. Galyon,* 109 Tenn. 1, 70 S.W. 607 (Tenn.1902); *Marsh v. Ellsworth,* 50 N.Y. 309 (1872); *Barnes v. McCrate,* 32 Me. 442 (1851); *Cooper v. Phipps,* 24 Or. 357, 33 P. 985 (Or.1893).

■ The common law rule of the absolute immunity of a witness from civil liability does not necessarily extend to § 1983 actions if the purposes of the act would be frustrated thereby and the policies underlying the absolute immunity are insufficient to override the national interest. *Imbler v. Pachtman, supra; Charles v. Wade, supra; Briscoe v. LaHue, supra.*

While, as aforesaid, there remain some differences of opinion among the circuits, compare *Briggs v. Goodwin, supra* with *Briscoe v. LaHue, supra,* we deem recent decisions of the United States Supreme Court to be dispositive of the issue of a witness's absolute immunity from civil liability under § 1983. In *Butz v. Economou,* 438 U.S. 478, 512, 98 S.Ct. 2894, 2913, 57 L.Ed.2d 895 (1978), the Court stated:

"The cluster of immunities protecting the various participants in judge-supervised trials stems from the characteristics of the judicial process rather than its location. As the *Bradley* Court suggested, 13 Wall., at 348–349, controversies sufficiently intense to erupt in litigation are not easily capped by a judicial decree. The loser in one forum will frequently seek another, charging the participants in the first with unconstitutional animus. *Pierson v. Ray,* 386 U.S., at 554 [87 S.Ct. 1213, 18 L.Ed.2d 288]. Absolute immunity is thus necessary to assure that judges, advocates, and *witnesses* can perform their respective functions without harassment or intimidation. [¶] At the same time, the safeguards built into the judicial process tend to reduce the need for private damages actions as a means of controlling unconstitutional conduct. The insulation of the judge from political influence, the importance of precedent in resolving controversies, the adversary nature of the process, and the correctability of error on appeal are just a few of the many checks on malicious action by judges. Advocates are restrained not only by their professional obligations, but by the knowledge that their assertions will be contested by their adversaries in open court. Jurors are carefully screened to remove all possibility of bias. *Witnesses* are, of course, subject to the rigors of cross-examination and the penalty of perjury. Because these features of the judicial process tend to enhance the reliability of information and the impartiality of the decisionmaking process, there is a less pressing need for individual suits to correct constitutional error." (emphasis added) (footnote omitted).

In *Imbler v. Pachtman, supra,* it was stated:
"[A] witness ... must be permitted to testify without fear of being sued if his testimony is disbelieved.... Of course, witnesses should not be encouraged to testify falsely .... However, if the risk of having to defend a civil damage suit is added to the deterrent against such conduct already provided by criminal laws against perjury and subornation of perjury, the risk of self-censorship becomes too great."

424 U.S. at 439–440, 96 S.Ct. at 999 (White, J., concurring). Although those statements of the United States Supreme Court have been denominated dicta, the federal circuit courts have considered them to be deliberate and therefore authoritative. *Charles v. Wade, supra; Briscoe v. LaHue, supra.*

The cases cited usually involved verbal testimony, but the immunity or privilege attaches to affidavits, as well as pleadings. *Sacks v. Stecker, supra; Young v. Young,* 18 F.2d 807 (D.C.Cir.1927); *McGehee v. Insurance Co. of North America,* 112 F. 853 (5th Cir.1902). The immunity has been held to apply as to virtually any statement in documents which have been filed in a judicial proceeding. *Richeson v. Kessler, supra,* (attorney's letter); *DiBlasio v. Kolodner,* 233 Md. 512, 197 A.2d 245 (1964) (declaration in prior suit); *Bartlett v. Christhilf,* 69 Md. 219, 14 A. 518 (1889) (petition); *Kerpelman v. Bricker,* 23 Md.App. 628, 329 A.2d 423 (1974) (letter of complaint); *Gilpin v. Tack,* 256 F.Supp. 562 (W.D.Ark.1966) (interrogatories); *O'Barr v. Feist,* 292 Ala. 440, 296 So.2d 152 (1974) (physician's letter); *Todd v. Cox,* 20 Ariz.App. 347, 512 P.2d 1234 (1973) (affidavit); *Albertson v. Raboff,* 295 P.2d 405, 46 Cal.2d 375 (1956) (notice of *lis pendens* ); *McDonald v. Lakewood Country Club,* 170 Colo. 355, 461 P.2d 437 (1969) (criminal information); *Jarman v. Offutt,* 239 N.C. 468, 80 S.E.2d 248 (1954) (affidavit); *Resciniti v. Padilla,* 420 N.Y.S.2d 759, 72 A.D.2d 557 (1979) (affidavit); *Adams v. Peck,* 288 Md. 1, 415 A.2d 292 (1980) (psychiatric report, not filed in proceeding).

We hold therefore that the affidavit filed by Neher in the temporary custody proceedings, being clearly relevant to the issue under inquiry, is privileged and Neher is absolutely immune from liability under the authorities cited.

We hold further that the dismissal as to defendants-respondents, Klein, Caballero, Isom and Phillips is affirmed, since a supervisory official cannot be sued under a theory of pure vicarious liability or respondeat superior under 42 U.S.C. § 1983. *Polk County v. Dodson,* 454 U.S. 312, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981); *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Reimer v. Smith,* 663 F.2d 1316 (5th Cir.1981); *Duchesne v. Sugarman,* 566 F.2d 817 (2d Cir.1977); *Doe v. County of Suffolk,* 494 F.Supp. 179 (E.D.N.Y.1980).

The orders of the district court are affirmed. Costs to defendants-respondents. No attorney's fees on appeal.

BAKES, C.J., and McFADDEN and DONALDSON, JJ., concur.

McFADDEN, J., registered his vote prior to his retirement on August 31, 1982.

BISTLINE, Justice, dissenting.

The Court's opinion in *Overman v. Overman,* 102 Idaho 235, 629 P.2d 127 (1981), declared an "indication"—for whatever an "indication" may be worth—"that the district court did not abuse its discretion in awarding, on the basis of the respondent father's motion and *the affidavit* submitted in support thereof, temporary custody of the parties' five minor children to the respondent father ...." 102 Idaho at 239, 629 P.2d at 131 (emphasis added). Nothing more need be said as to the validity of the Court's opinion which has not already been said in my dissenting opinion in that case—other than that time has reinforced my views.[1] Today, our concern is with that affidavit,[2] its signator, Mr. Neher, and any of Mr. Neher's supervisors who authorized or encouraged his improper disclosures.

At the outset, I believe it is important to point out a few things regarding Neher and his affidavit. First, if a general practitioner having only peripheral contacts with the Department of Health & Welfare knows, certainly Neher knew he was stepping over the line in supplying Overman's attorney with supposed facts and Neher's conclusions which were to be used against Mrs. Overman in Mr. Overman's at that time unfiled motion for modification of the child custody provisions of the decree of divorce. Second, if Neher thought the children were in apparent danger, to the extent that he be-

[1]. Responsive to my dissent in *Overman v. Overman,* 102 Idaho 235, 629 P.2d 127 (1981), Judge Lodge did have the kindness to send a letter to each member of the Court in which he candidly declared that in addition to the Neher affidavit he felt free also to listen to counsel propounding the motion—counsel being an officer of the Court. He also expressed the thought that other jurisdictions were not quick to respect Idaho prior jurisdiction.

I might add that in my dissent in *Overman v. Overman,* I discussed the unlikelihood that a trial judge could grant such an *ex parte* order as was entered here, contemporaneously declaring his lack of bias in doing so, and thereafter continue in the case as the final determiner of the ultimate issue already thus decided *ex parte.* In my opinion in *Koester v. Koester,* 99 Idaho 654, 661, 586 P.2d 1370, 1377 (1978), I pointed out a similar problem. There, in making a "final" order of custody following complete submission of the divorce action including custody, the trial judge was admittedly influenced by the earlier award of temporary custody. Finding both parents equally fit, his nod went to the father who had made the early move and obtained temporary custody, the trial judge believing it not in the best interests of the children that they be uprooted. While such is true, as I pointed out, the net result may be less than desireable—turning motions for temporary custody into the main bout, rather than the preliminary event which the practice always contemplated. It would seem beyond dispute that if a trial judge's final decision on a custody issue may be influenced by the placing of the children in an uncontested preliminary matter, he is equally or more likely to be influenced where prior to his final resolution of a custody issue he has flown into the face of a prior resolution of the custody issue which was final and res judicata other than for appeal or subsequent modification for change of circumstances established at a trial held for that very purpose.

[2]. The entire Neher affidavit is found beginning at 629 P.2d 137, and at 102 Idaho 245.

lieved state intervention was necessary, then he could have proceeded under I.C. § 16–1612, which allows the state to step in and remove the children immediately.[3] These procedures, however, do not allow the state or its employees to take over or interfere with, and thereby short-circuit, the judicial process, as Neher did in this case. Third, as to Neher's wholly conclusory statement that he thought Mrs. Overman might take the children and exit Idaho— which, together with *ex parte* oral argument of Mr. Overman's attorney on presenting Overman's petition, most obviously excited the trial court's attention and precipitated its immediate and drastic action[4]—the answer to that is simply that at least so far as I know, where the state has a legitimate concern for the welfare of children, it can and freely does exercise that jurisdiction in each and every of the fifty states which comprise the union. *See* I.C. § 5–1003. Thus, as the trial court, Judge McClintick, noted, Neher violated the confidentiality of his position by disclosing private information in the affidavit he prepared for Mr. Overman. In addition, Neher was guilty of taking sides in a civil controversy the settlement of which properly belonged to the courts, and he thereby thwarted Mrs. Overman's rights of due process.

## I.

With all due respect to the author of the Court's opinion, to my mind, the district court's memorandum decision is a better portrayal of the facts in this case. The district court candidly stated that "Mike Neher disclosed private information from the files of the Idaho Department of Health and Welfare relating to plaintiff's social activities and neglect of her children." The

court also noted that the plaintiff was suing "each of the defendants individually and in his official capacity." The district court then dismissed the suit against the defendants in their official capacity for failure to file a timely notice of claim. The suit against the defendants in their individual capacities, however, was dismissed on the ground that "the filing of an affidavit in a state court tort action ... is absolutely privileged even though defamatory or in violation of a right to privacy," the court citing *Richeson v. Kessler,* 73 Idaho 548, 255 P.2d 707 (1953). Plaintiff's third cause of action claiming damages under § 1983 was dismissed by the district court in a later order, the court finding that "an absolute privilege has been extended to witnesses in 1983 actions in Federal Courts in this Circuit."

The Court in this case upholds the trial court's dismissal of the action against the defendants in their individual capacities, not upon the grounds set forth below, but upon the alternative basis "that I.C. § 6–905, requiring a timely notice of claim, applies not only to suits against the state, but also to suits against state employees for their acts or omissions in the course and scope of their employment." I agree that when a state employee is sued solely for acts done within the course and scope of his employment, *i.e.,* within his official capacity, the statute requires that the employee be given the same notice as the state. But, what if the employee's conduct is not within the "course and scope" of his employment? Assuming that the allegations in the plaintiff's complaint were insufficient to state a cause of action against the defendants in their individual capacities, I believe it would be better to do as the court did in

---

**3.** Such drastic action is justified "only where the child is endangered in his surroundings and prompt removal is necessary to prevent serious physical or mental injury to the child." I.C. § 16–1612.

**4.** The argument of Mr. Overman's attorney must have been extremely persuasive since the conclusory affidavit falls way short of sufficing as a predicate upon which to enter an *ex parte* order which had the effect of modifying, even if

only temporarily, a final decree of divorce. In fact, the affidavit and argument may have sidetracked the trial court, which issued the *ex parte* order "for the purpose of maintaining the jurisdiction in this court," even though the court clearly would have retained jurisdiction in the absence of the order. *See* I.C. § 5–1003. *See Bigger v. Biggers,* 103 Idaho 550, 650 P.2d 692 (1982).

*Roberts v. Hollandsworth,* 582 F.2d 496 (9th Cir.1978)—remand the case with leave to the plaintiff to amend her claim if she desires—than to deny plaintiff her day in court because of a complaint not drafted with the specificity required in common law pleadings.[5]

The plaintiff's complaint clearly states that "[e]ach defendant is being sued . . . individually and in their official capacity." Although the complaint later states that the affidavit "was published by Defendant Mike Neher as an employee of the other defendants while acting within the scope of his employment," which would bring into play "official" capacity, the complaint nevertheless adequately sets forth a cause of action against the defendants in their "individual" capacities. Clearly this was the belief of the trial court. If it had viewed the complaint as alleging a cause of action against the defendants based solely upon official acts within the course and scope of their employment, the trial court readily could have disposed of the first two causes of action on the grounds of non-compliance with the notice requirements. The statutes specifically require a notice of claim to be filed if a claim against a state employee is based upon an act "within the course and scope of his employment." *See* I.C. §§ 6–905 and –908. The fact that the trial court felt compelled to address the more difficult issue of whether the filing of the affidavit was privileged, suggests that

the trial court was of the opinion, as am I, that the plaintiff's complaint adequately sets forth a cause of action against the defendants in their individual capacities— for actions outside the course and scope of their employment, and which by reason thereof are not done in any official capacity.

The Court cites to the rebuttable presumption contained in I.C. § 6–903(e) and states that the allegations of the complaint support the presumption "that the action of Neher was in the scope and course of his employment." A majority of the Court apparently forgets that this case involves a motion to dismiss under I.R.C.P. 12(b) and that at this stage our concern is with the sufficiency of the allegations in the complaint. In my opinion, the presumption should only come into play at trial, where evidence developed—perhaps by both sides—would rebut it.

The record clearly demonstrates that Neher acted outside the course and scope of his employment. The trial court specifically stated that Neher has "disclosed private information from the files of the Idaho Department of Health and Welfare." That which I wrote in *Overman v. Overman* is applicable—there was improper concert of action between Mr. Overman and Mr. Neher. I have no knowledge of any rules and regulations which would authorize Mr. Neher to collaborate with Mr. Overman to the

**5.** Although this was obviously a point which bothered the trial court, in its order dismissing the action the court stated that "there is no amendment of any cause of action of the Complaint which plaintiff could reasonably be expected to make which would save the action, and that it ought to be dismissed with prejudice." As will be developed more fully in the text, *infra,* the trial court's order was based upon two things: (1) its assumption that plaintiff's complaint adequately set forth a cause of action against the defendants in their official capacities (for acts within the course and scope of their employment) and in their individual capacities; and (2) its holding that the individual defendants were entitled to "the benefits of an absolute witness privilege." It was because the trial court held that an absolute witness privilege extended to the defendants in their individual capacities that the court found that no amendment would save the plaintiff's com-

plaint. The majority never reaches the issue of whether such absolute witness immunity exists, because it reads the complaint as stating a cause of action against the defendants only for acts "within the scope and course of their employment," and dismisses plaintiff's first two causes of action for failure to comply with the notice of claim requirements of I.C. § 6–905. Unless the Court is prepared to hold that there is an absolute witness privilege available to state employees which extends to acts outside the scope and course of their employment, the Court, on its own rationale, should at the least remand with leave to amend since the plaintiff clearly would be able to state a cause of action against at least Mike Neher for actions which were beyond the scope and course of his employment, assuming that the complaint in question did not do so—a doubtful proposition where Judge McClintick considered that it was adequate, as do I.

extent of providing information which was not Neher's for the giving. Absent any authority granted to him, he obviously was acting beyond the scope and authority of his employment. Although Neher was perfectly willing *to lend* color of authority to his actions, it cannot be said that he acted in anything but an individual capacity—notwithstanding the fact that he purported to act from his position of employment with the State of Idaho.

My greatest concern in this case is with the Court's unqualified statement that "since I.C. § 6–908 requires the filing of a notice of claim, as a prerequisite to a suit against a governmental employee and no such claim was filed, we affirm the trial court's dismissal of the cause of action against defendants-respondents *in their individual capacities.*" (Emphasis added.) Because the notice of claim requirement is only applicable when the acts of the employee are within the course and scope of his employment, it is clear that the majority, perhaps through tunnel vision, sees no distinction between a suit against an individual for acts done in his official capacity and one for acts which transcend or do not fall within his official duty—and hence cannot become the acts of his state employer, remaining relegated to acts of an individual. That there has always been such a distinction has heretofore been my observation of the law. Thus, in my opinion, the Court today greatly errs in holding that a state employee sued in an individual capacity is protected by the same notice requirement which cloaks him in immunity for official acts.

The United States Supreme Court, in *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), stated:

"*Ex Parte Young* [209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1980)] teaches that when a state officer acts under a state law in a manner violative of the Federal Constitution, he

'comes into conflict with the superior authority of that Constitution, and he is in that case stripped of his official or representative character and is subject-

ed *in his person* to the consequences of his individual conduct. The State has no power to impart to him any immunity from responsibility to the supreme authority of the United States.' *Id.,* at 159–160. (Emphasis supplied.)" 416 U.S. at 238, 94 S.Ct. at 1687.

Clearly the *Young* Court's observations demonstrate the proper distinction between liability in an "official capacity" and liability in an "individual capacity." A person cannot be acting within the scope of employment and yet act in an individual capacity, even though the majority approach equates the two. Acts performed within the scope of employment are performed in an *official capacity.* Obviously, it is always the "individual" (a person) performing the acts in question, but the "official capacity" and "individual capacity" labels are legally distinct.

The 1976 revision of I.C. § 6–903(a) was not designed to, nor did it, incorporate protection from civil claims for state employees acting in their individual capacity as the majority would have one believe. I.C. § 6–903(a) protects "those of its *employees* acting within the course and scope of their employment or duties . . . ." (Emphasis added.) "Employees" is defined in I.C. § 6–902(4). "Definitions—As used in this act: . . . 4. 'Employee' means an officer, employee, or servant of a governmental entity, including elected or appointed officials, and persons acting on behalf of the governmental entity *in any official capacity* . . . ." (Emphasis added.) The combined code sections indicate that an employee acting within the scope of employment does so in an "official capacity." It is by no means a major step in reasoning to observe that when the act transcends the scope of employment, the person is then acting in an "individual capacity," *i.e., in his own capacity.*

It is because an agent, employee, or servant of the state acts within the scope or course of his employment that he renders the state liable for his conduct under the Tort Claims Act. The Act, however, contemplates that the employee, too, may be

liable, and that the employee, too, may have assets or insurance. It is axiomatic that an employee who acts on his own behalf and not within the scope and course of his employment will not bind his employer by his conduct, and that is true whether it be a corporate entity or a governmental entity. The tortious acting employee has always been liable for his torts, although frequently he may not have the financial resources necessary to satisfy a judgment against him. Hence, most suits are aimed at the employer where the conduct complained of is possibly within the scope and course of the employment. In bringing suit against Neher, nothing was gained or lost by attempting to bring in the state albeit with allegations which perhaps could not be substantiated. All that was accomplished by the 1976 legislature was to declare the state's *responsibility* for tortious acts of its employees and servants, provided such acts were within the scope and course of their employment. It has been my understanding that such was the state of the law prior to the amendment.

The Act was in no way intended to make the state responsible for acts of its employees not within the scope and course of their employment or to provide protection to employees in such instances. By unnecessarily adopting the broad proposition that state employees are protected by the Tort Claims Act, I.C. § 6–901, *et seq.,* when sued in an individual capacity, the majority has undermined the very purpose of the Act. Extending protection to a state employee sued in his or her individual capacity vis-a-vis the timely notice requirements of I.C. § 6–905, *a fortiori* presumes the state must also stand behind an employee sued in an individual capacity whenever the notice requirement is fulfilled by the plaintiff. In other words, as a result of the Court's holding announced today, the state may now become the indemnitor and defender of claims against all of its employees sued in an individual capacity as well as in an official capacity—a result clearly not contemplated by the Idaho Tort Claims Act. One would hardly expect state resources to be used in defense of a State employee who

furnishes to a person not entitled confidential information from state vaults, which information belongs to the state alone.

In my opinion, the plaintiff's complaint adequately sets forth a cause of action against the defendants in their individual capacities. I.C. § 6–905 does not require a notice of claim for a suit against state employees for actions not within "the course and scope of their employment." In addition, for reasons similar to those set forth in my discussion of witness immunity under § 1983, part II, *supra,* I believe there is no absolute witness immunity under state law which would be applicable under the circumstances of this case. Thus, the plaintiff should be allowed to proceed to trial on her cause of action against the defendants in their individual capacities. On reversal it would be appropriate but not necessary to allow housekeeping amendments to the pleadings.

## II.

As the majority correctly notes, absolute witness immunity from civil liability does not extend to 42 U.S.C. § 1983 actions if the purpose of § 1983 would be frustrated by application of the immunity theory and the fundamental policies underlying witness immunity are incapable of overriding the interests of justice in providing a remedy for a "constitutional tort" action. *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976); *Charles v. Wade,* 665 F.2d 661 (5th Cir.1982); *Briscoe v. LaHue,* 663 F.2d 713 (7th Cir.1981), *cert. granted,* 455 U.S. 1016, 102 S.Ct. 1708, 72 L.Ed.2d 132 (1982). I am precluded, however, from adhering to the Court's determination that application of absolute witness immunity is appropriate in this instance. It is my opinion that even a cursory analysis of the substantive policies essential to an application of absolute witness immunity reveals no justification for such a limitation to the availability of a § 1983 action under the facts presented.

The Court inappropriately approves of the district court's reliance upon *Blevins v.*

*Ford,* 572 F.2d 1336 (9th Cir.1978), as controlling the § 1983 immunity issue presented by this case. A discerning comparison of *Blevins* with the facts alleged in the complaint, however, discloses substantial differences which I believe demonstrate the severe ramifications of adopting an absolute witness immunity theory.

The *Blevins* court recognized that absolute immunity, for "those who testify in the course of judicial proceedings," was based on "reasons of public policy." *Id.* at 1338. These "reasons of public policy" were recently outlined by the United States Supreme Court in *Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978). Note first the *Butz* Court's qualification of the policy reasons supporting the immunity theory as applying to "the various participants in *judge-supervised trials.*" (Emphasis added.) Similarly, the *Blevins* holding applied to "*those who testify* in the course of judicial proceedings." 572 F.2d at 1338. (Emphasis added.) Both decisions contemplate situations in which witnesses are testifying in trials replete with built-in judicial safeguards (discussed *infra*) sufficient to control unconstitutional conduct which § 1983 is correspondingly designed to prevent. *See Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). Thus, the need for access to a § 1983 action in a judge supervised trial setting is reduced and application of witness immunity may be justified.

The current case presents a situation in which the individual seeking immunity is, at best, on the outermost fringe of a "judge supervised" proceeding. Neher, an employee of the State of Idaho Department of Health and Welfare, signed an affidavit manufactured by Mrs. Overman's former husband's attorney. The affidavit formed the basis of the district court's *ex parte* order assigning temporary custody of plaintiff-appellant's children to her former husband. Disdaining scrutiny, the majority categorizes defendant-respondent as a "witness" and thereby affords him the protection provided witnesses by the absolute witness immunity. Whether Mr. Neher can, or should (for purposes of formality), be labeled a "witness" in this context is immaterial since policy considerations at the basis of witness immunity cannot be reconciled with its application in this case. As the United States Supreme Court noted in *Butz:*

> "[T]he safeguards built into the judicial process tend to reduce the need for private damages actions as a means of controlling unconstitutional conduct.... Witnesses are ... subject to the rigors of cross-examination and the penalty of perjury. Because these features of the judicial process tend to enhance the *reliability of information* and the *impartiality of the decisionmaking process,* there is a less pressing need for individual suits to correct constitutional error." 438 U.S. at 512, 98 S.Ct. at 2913 (emphasis added).

This "witness" was obviously not subject to the "rigors of cross-examination" at the time he signed his remarkable affidavit, nor when it was submitted to a trial judge who would take precipitate and drastic action thereon—without hearing from the plaintiff or her attorney. Whether the "penalty of perjury" posed any real threat to Mr. Neher signing this particular affidavit drawn by Overman's attorney as compared to actual testimony given in trial following the swearing of an oath, is questionable. Any opportunity to subsequently cross-examine him, or subject him to the penalty of perjury (assuming that a state employee would be so prosecuted for "doing his duty") could not dissipate the effect of the violation that had already occurred. Furthermore, the affidavit was laced with mere conclusions—most of which were founded on hearsay information which would have had to have been excluded at trial due to its *unreliability.* Considering that this unreliable information was used in an *ex parte* hearing, it is not readily seen how the *impartiality* of the decision making process was enhanced. It is evident, therefore, that the policies enunciated by the United States Supreme Court countenancing application of absolute witness immunity proscribe its application in this instance.

Each of the cases cited by the Court in support of the majority rule favoring absolute immunity for witnesses, *Charles v. Wade,* 665 F.2d 661 (5th Cir.1982); *Briscoe v. LaHue,* 663 F.2d 713 (7th Cir.1981), *cert. granted,* 455 U.S. 1016, 102 S.Ct. 1708, 72 L.Ed.2d 132 (1982); *Myers v. Bull,* 599 F.2d 863 (8th Cir.1979), *cert. denied,* 444 U.S. 901, 100 S.Ct. 213, 62 L.Ed.2d 138 (1979); *Burke v. Miller,* 580 F.2d 108 (4th Cir.1978), *cert. denied,* 440 U.S. 930, 99 S.Ct. 1268, 59 L.Ed.2d 487 (1979); *Bennett v. Passic,* 545 F.2d 1260 (10th Cir.1976); *Brawer v. Horowitz,* 535 F.2d 830 (3d Cir.1976), involved witnesses who had testified at trial, and who were therefore restrained by the safeguards defined in *Butz.* In the current case, however, the policies in favor of absolute witness immunity are incapable of protecting against the alleged violations, and these violations can only be remedied by a § 1983 action.

It is my best judgment that Mr. Neher's witness immunity under a § 1983 action is best analyzed, not from his status as a witness alone, but from his position as a public official who abandoned that status to pass out information gained in the scope of his employment with the Department of Health and Welfare and through his involvement with the Overman children.

The United States Supreme Court has provided only a good-faith, qualified immunity to several levels of public officials. *Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214, *reh'g denied,* 421 U.S. 921, 95 S.Ct. 1589, 43 L.Ed.2d 790 (1975) (school board members); *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) (state executive officials); *Procunier v. Navarette,* 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978) (prison officials); *Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967) (police officers).

"The rationale for according these state officials with immunity when they act in good faith and with a reasonable belief that their actions are lawful is to minimize the prospect that the threat of liability will deter such officials from exercising their discretion and performing their official duties ... without totally undermining the purpose of § 1983, which is to provide a remedy to persons deprived of their federal rights by the abuse of official power." *Charles v. Wade,* 665 F.2d 661, 668 (1982) (Kravitch, J., dissenting) (citation omitted).

Judge Kravitch also expounded on the difference between public official witnesses and other witnesses in relationship to the absolute witness immunity theory:

"Public officials, 'who in any event face the possibility of liability for most of their official acts, who may be obligated to testify as an aspect of their official duties, and who are normally represented by government counsel in § 1983 actions,' ... are likely to be less intimidated than private citizens by the threat of a § 1983 action. *Thus, the policy considerations that countenance absolute immunity for lay witnesses at common law do not apply with equal force in the context of a § 1983 action against a police official who testifies within the scope of his duties. Briggs v. Goodwin,* 569 F.2d 10, 18 (D.C.Cir.1977), *cert. denied,* 437 U.S. 904, 98 S.Ct. 3089, 57 L.Ed.2d 1133 (1978); *Burke v. Miller,* 580 F.2d 108, 112 (4th Cir.1978) (Winter, J., concurring). *See Hilliard v. Williams,* 516 F.2d 1344, 1349 (6th Cir.1975), *vacated on other grounds,* 424 U.S. 961, 96 S.Ct. 1453, 47 L.Ed.2d 729 (1976), *affirmed after remand,* 540 F.2d 220 (6th Cir.1976) (police officer liable under § 1983 for falsely testifying in a criminal trial)." 665 F.2d at 669 (quoting *Briscoe v. LaHue,* 663 F.2d 713, 719 (1981) (emphasis added).

The reasoning above is as relevant to Health & Welfare workers as it is to police officers.

### III.

Plaintiff-appellant has properly placed in issue before the Court whether defendants-respondents were acting within the scope of their employment and whether they have violated 42 U.S.C. § 1983. I intimate no judgment regarding Mrs. Overman's ability to prove the allegations at trial. She is, however, entitled to further proceedings to

be heard more fully than allowed at a motion to dismiss.